*In re* POWERS MINORS

Docket Nos. 220382, 220848. Submitted June 14, 2000, at Detroit. Decided
    December 26, 2000, at 9:25 A.M.

    The Family Independence Agency filed a petition in the Juvenile Divi-
sion of the Wayne County Probate Court, seeking termination of
the parental rights of Deborah L. Powers in eight of her children
and of the parental rights of Keith Weaver, alleged father of two of
the children, Timothy Cribbs, alleged father of four of the children,
and the unknown father of the other child. The petition alleged
with respect to Powers that she had failed to provide adequate
housing for the children, had not sought treatment for her sub-
stance abuse problems, and had physically abused at least one of
the children. The children were placed in foster care. Powers
entered into a parent/agency agreement whereby she agreed to
obtain suitable housing with appropriate furnishings, to attend a
substance abuse program, and to maintain regular visitation with
the children. The children thereafter were made temporary wards
of the court. Powers subsequently had another child by an
unknown father, and that child was also made a ward of the court.
The petitioner filed a subsequent petition seeking permanent termi-
nation of the parental rights of the parents and alleging that Pow-
ers had failed to rectify the conditions that had led to the prior
adjudication, had failed to submit to timely or consistent weekly
drug screens, and had failed to obtain suitable housing and that
Weaver and Cribbs had failed to visit the children weekly, had
failed to submit to weekly random drug screens, and had failed to
seek custody of the children. At the termination hearing, Weaver
did not appear, and his court-appointed attorney, who arrived late,
was told by the hearing referee that, because her client was not
there, she was excused. The hearing proceeded without Weaver's
presence and without his attorney's participation. The Wayne Cir-
cuit Court, Family Division, Freddie G. Burton, Jr., J., entered an
order terminating the parental rights of Powers, Weaver, Cribbs,
and the unknown father or fathers, adopting the findings and hold-
ings of the hearing referee. Weaver appealed (Docket No. 220382),
and Powers appealed (Docket No. 220848). The appeals were
consolidated.

The Court of Appeals *held*:

1. The circuit court cited four statutory grounds for terminating Powers' parental rights, including that she had deserted her children for ninety-one or more days without seeking custody and that 182 or more days had elapsed since the initial dispositional order and the conditions that led to the adjudication continued to exist without a reasonable likelihood that the conditions would be rectified within a reasonable time. Although the record does not support the conclusion that Powers had abandoned her children, and the court thus erred in terminating her parental rights on that ground, the record does support the court's determination that Powers had failed to rectify the conditions that had led to the initial adjudication during the two-year period between the initial order of adjudication and the termination hearing. Because an order terminating parental rights needs to be supported by only one statutory ground, there is no need to determine whether the circuit court's termination order was properly entered on the basis of some other statutory ground.

2. The court did not err in finding that the termination of Powers' parental rights was in the best interests of her children. Accordingly, the order in Docket No. 220848 must be affirmed.

3. A parent in a termination proceeding has the right to retain an attorney, and, if financially unable to do so, the parent has the right, pursuant to statute, court rule, and the constitutional rights of due process and equal protection, to request and receive a court-appointed attorney. Accordingly, Weaver was entitled to have his court-appointed attorney present at the termination hearing. While there may have been some valid basis for the hearing referee's decision to excuse Weaver's attorney from participation in the termination hearing, such a basis does not appear on the record. Accordingly, it is necessary to remand Weaver's case (Docket No. 220382) to the trial court for an evidentiary hearing to create a record adequate to permit a proper review by the Court of Appeals of the issue raised in Weaver's appeal.

The order in Docket No. 220848 is affirmed. The matter in Docket No. 220382 is remanded to the trial court for an evidentiary hearing. Jurisdiction is retained in Docket No. 220382.

1. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — APPEAL.

A court in a proceeding to terminate parental rights must find that at least one of the statutory grounds for termination of parental rights has been shown by clear and convincing evidence; because termination of parental rights is proper if only one of the statutory grounds is shown, an appellate court, on determining that parental rights were properly terminated on one statutory ground, need not

address the question whether the parental rights were properly terminated on any alternative statutory ground relied on by the trial court (MCL 712A.19a; MSA 27.3178[598.19a]).

2. PARENT AND CHILD — TERMINATION OF PARENTAL RIGHTS — RIGHT TO COUNSEL.

A parent in a termination proceeding has the right to retain an attorney; if financially unable to do so, the parent has the right, pursuant to statute, court rule, and the constitutional rights of due process and equal protection, to request and receive a court-appointed attorney (Const 1963, art 1, § 17; MCL 712A.17c; MSA 27.3178[598.17c]; MCR 5.915[B]).

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Susan A. Harris*, Assistant Attorney General, for the Family Independence Agency.

*Felicia M. Courtright*, for Keith Weaver.

*John B. Owdziej*, for Deborah L. Powers.

*Lauryl Scott Beeckman*, for the minor children.

Before: O'CONNELL, P.J., and KELLY and WHITBECK, JJ.

WHITBECK, J. In Docket No. 220382, respondent Keith Weaver appeals as of right from a family court order terminating his parental rights to the minor children MSP and MBP under MCL 712A.19b(3)(a)(ii), (c)(i), (g), and (j); MSA 27.3178(598.19b)(3)(a)(ii), (c)(i), (g), and (j). In Docket No. 220848, respondent Deborah Louise Powers appeals as of right from the same order, which terminated her parental rights to all eight children[1] under the same statutory provi-

---

[1] The record does not clearly establish how many of these children Weaver and Timothy Cribbs each fathered because the children's paternity was never established. Powers has two other children who are older than the eight children involved in this case. The family court did not terminate her parental rights to those two children in this case.

sions. Respondent Timothy Cribbs does not appeal. We affirm the order terminating Powers' parental rights. We remand Weaver's case to the family court for an evidentiary hearing regarding the question whether he was denied the right to counsel.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Powers was referred to the Family Independence Agency (FIA) in 1993, 1994, and 1996 when three of her children tested positive for drugs at birth. In August 1996, hospital staff referred one of these babies to the New Beginnings program, which assists at-risk infants. A nurse who worked for New Beginnings said that Powers admitted she used drugs and alcohol while pregnant. The nurse was also able to report that the baby participating in the New Beginnings program had gained little weight since birth and that Powers had very little furniture in her home.

At the same time Powers became involved with New Beginnings, the FIA also referred her to the Families First program, which works with parents at risk of having their children placed in foster care. A Families First employee spoke with Powers and recommended that she obtain inpatient substance abuse treatment. When Powers said she was not willing to enter an inpatient program, the employee referred her to an outpatient clinic.

An FIA caseworker decided to remove the children from Powers' home one week later because Powers had not yet sought treatment for her substance abuse problem. On the day the caseworker removed the children from Powers' home, seven-year-old TKP reportedly said that his mother had burned his

younger brother, ALP, on the buttocks with an iron. A Lutheran Social Services (LSS) caseworker corroborated TKP's report when she recalled that ALP said his mother caused his scar and that an older child, PJC, said she saw Powers burn ALP. The FIA caseworker also personally observed ALP's scar.

Abuse was not the only problem the children were facing at the time they were removed from their mother's home. Apparently, this home was unsuitable for their needs in that it had no beds or kitchen appliances. Weaver and Cribbs did not provide any financial support for the children, nor does it seem that they participated in raising the children. The men were not living with the children at the time the FIA removed the children from Powers' home.

The FIA filed the original petition in this case in September 1996 for the seven oldest children. The allegations in the petition generally concerned the inappropriate housing, but also noted that several of the children were exposed to cocaine, alcohol, and marijuana before birth. The original petition was amended later that fall to include new allegations about abuse against the children.

In late fall 1996 or early winter 1997, Powers entered into a parent/agency agreement with the LSS. As part of that agreement, Powers was advised to obtain suitable housing, with appropriate furnishings, to attend a substance abuse program, and to have regular visitation with the children. Although Powers had left a thirty-day inpatient substance abuse treatment program in October 1996 after only five days, she completed another inpatient program in January and February 1997. In February 1997, the family court made the seven oldest children temporary wards of

the court. In December 1997, the FIA filed a separate petition for DDP, who was born in November 1997 without signs of alcohol or drug exposure at birth. DDP became a temporary court ward in February 1998.

Powers failed to make significant and permanent progress under the parent/agency agreement before the FIA filed the supplemental petition to terminate her parental rights. For instance, she failed to provide her FIA drug screens between November 1997 and January 1998, but submitted negative drug screens later in 1998. Powers had failed to attend many of her outpatient treatment appointments and had missed three of fourteen therapy sessions. According to her caseworker, sometime in 1998 Powers told her drug counselor that she had consumed alcohol. Although Powers had found housing, she still did not own beds, appliances, or much furniture. Powers apparently did not have a strong bond with her two youngest children and even told her caseworker to return DDP to foster care when the baby started crying during one visit. Powers also consistently missed visits with her children.

Weaver did not improve his circumstances or commitment to his children during this period either. He seldom visited his children. Some of his visits were canceled because he appeared intoxicated. The LSS eventually ended his visits because, despite numerous referrals and reminders, he failed to provide the drug tests that the family court had ordered. When he did complete drug screens in 1998, two tests were positive for alcohol. The caseworker said that Weaver failed to attend parenting classes, drug and alcohol assessments, and a psychiatric evaluation regarding

domestic violence. According to the family court, he even appeared to be under the influence of some substance while in court. Weaver also physically fought with Cribbs during a visit with his children as well as at the courthouse on the day of one of the dispositional review hearings.

After the termination hearing, during which the hearing referee "dismissed" Weaver's attorney, the family court determined that there was clear and convincing evidence to terminate each parent's parental rights. The family court explained that it terminated Weaver's parental rights because he completely failed to comply with the treatment plan and appeared intoxicated and abusive in court. Regarding Powers, the family court cited her poor attitude about therapy and planning for her children, her decision to continue her relationships with Weaver and Cribbs despite her claim that they abused her, and her failure to fulfill the parent/agency agreement. As for Weaver, the family court concluded that he had completely failed to comply with the parent/agency agreement and was unfit to be a parent given his substance abuse and pattern of fighting.

## II. STANDARD OF REVIEW

A family court must find clear and convincing evidence of at least one statutory ground to terminate a parent's parental rights.[2] This Court reviews for clear error a family court's decision to terminate parental rights.[3] A finding is clearly erroneous if this Court is

---

[2] *In re McIntyre*, 192 Mich App 47, 50; 480 NW2d 293 (1991).

[3] *In re Sours Minors*, 459 Mich 624, 633; 593 NW2d 520 (1999).

left with a definite and firm conviction that a mistake has been made.[4]

### III. TERMINATION OF POWERS' PARENTAL RIGHTS

Powers contends that there was insufficient evidence to terminate her parental rights under the four grounds cited by the family court. The FIA concedes that the family court erred in terminating respondent Powers' parental rights under MCL 712A.19b(3)(a)(ii); MSA 27.3178(598.19b)(3)(a)(ii), which requires a family court to terminate parental rights if the parent has deserted her children for ninety-one days or more without seeking custody. This case clearly did not involve desertion by Powers, at least for the length of time described in the statute. Nevertheless, any error in terminating Powers' parental rights under this subsection was harmless because the family court needed clear and convincing evidence of only one statutory ground to support its termination order.[5]

Powers also argues that there was insufficient evidence to terminate her parental rights under MCL 712A.19b(3)(c)(i); MSA 27.3178(598.19b)(3)(c)(i) because she attended a drug treatment program, took drug tests that had negative results, and obtained housing. Under subsection 3(c)(i), a family court must terminate a parent's parental rights if there is clear and convincing evidence that

[t]he parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order . . . [and] [t]he con-

---

[4] *In re Conley*, 216 Mich App 41, 42; 549 NW2d 353 (1996).

[5] *McIntyre, supra* at 50; *In re Vasquez*, 199 Mich App 44, 52; 501 NW2d 231 (1993).

ditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the age of the child.

The conditions leading to the adjudication in this case were Powers' failure to provide suitable housing for her children as well as her drug and alcohol abuse. While Powers did find housing, it was inadequate for her children because she still lacked kitchen appliances and beds. She also had a continuing pattern of missing therapy and drug treatment sessions. During the previous year, she had missed numerous drug screens and had admitted drinking alcohol. The FIA had filed its petition two years before the family court terminated Powers' parental rights; thus, the period between the dispositional order and the termination proceeding clearly exceeded the 182-day period required by the statute. Yet, despite this time to make changes and the opportunity to take advantage of a variety of services, the conditions that originally brought the children into the foster care system still existed. There was no evidence that Powers would be likely to rectify these conditions, i.e., find suitable furnishings for her home and cease her drug and alcohol abuse, within a reasonable time considering the ages of these children. Thus, the family court did not err in finding clear and convincing evidence to terminate Powers' parental rights under subsection 3(c)(i). Because the family court needed only one ground for termination,[6] we need not address whether the family court properly found additional grounds for termination.

---

[6] *McIntyre, supra* at 50.

Powers also contends that terminating her parental rights was clearly not in the best interests of her children. After a family court finds a statutory basis for termination, it lacks the discretion to decline to terminate a parent's parental rights unless termination is clearly against the child's best interests.[7] In support of her argument, Powers points out that thirteen-year-old KMP expressed an interest in being reunited with her. However, given Powers' history of drug and alcohol abuse, neglect, and child abuse, we cannot say that this one expression of interest was enough to make the trial court's conclusion on this factor clearly erroneous. Therefore, we affirm the order terminating her parental rights.

### IV. TERMINATION OF WEAVER'S PARENTAL RIGHTS

We agree with the family court that there was clear and convincing evidence to support terminating Weaver's parental rights. Nevertheless, we are cognizant of Weaver's argument that he was denied due process and his right to counsel under MCR 5.915(B) at the June 30, 1998, termination hearing. The record reveals that, although he had attended a hearing just two months earlier, he did not attend this termination hearing. We have no way to determine whether he had any legitimate reason to miss this hearing. In any event, his court-appointed counsel appeared at the hearing but was late. When the hearing referee noticed that his attorney had arrived, the following exchange occurred:

*The Court*: Miss Burns (phonetic), are you on this case?

---

[7] MCL 712A.19b(5); MSA 27.3178(598.19b)(5).

> *Ms. Burns*: Yes, your Honor. I was appointed for Mr. Weaver at the pre-trial, he did show up, but I see that he's not—
>
> *The Court*: (Interposing) Okay. Since he's not here, we'll thank and excuse you.

The hearing referee continued the hearing without Weaver's presence and without his attorney's participation.[8] Weaver's attorney evidently took this "dismissal" as a statement concerning her representation as a whole, because she did not appear at the final termination hearing and there was no substitute counsel.

A parent in a termination proceeding has the right to retain an attorney and, if financially unable to retain counsel, has the right to "request and receive" a court-appointed attorney as a matter of statute and court rule.[9] The constitutional concepts of due process and equal protection also grant respondents in termination proceedings the right to counsel.[10] Thus, there appears no question that Weaver was entitled to

---

[8] The record does not reveal whether Weaver's attorney left the room after she was "dismissed."

[9] MCR 5.915(B); MCL 712A.17(c); MSA 27.3178(598.17c).

[10] See *In re EP*, 234 Mich App 582, 597-598; 595 NW2d 167 (1999), overruled on other grounds by *In re Trejo Minors*, 462 Mich 341, 353; n 10; 612 NW2d 407 (2000) ("Although the constitutional provisions explicitly guaranteeing the right to counsel apply only in criminal proceedings, the right to due process also indirectly guarantees assistance of counsel in child protective proceedings."); *In re Trowbridge*, 155 Mich App 785, 786; 401 NW2d 65 (1986) ("The right to appointed counsel at such [termination] proceedings is . . . a fundamental constitutional right guaranteed by the equal protection clauses of the United States and Michigan Constitutions."). But see *In re Osborne (On Remand, After Remand)*, 237 Mich App 597, 606; 603 NW2d 824 (1999) (questioning whether the Michigan Constitution guarantees the right to court-appointed counsel for indigent respondents in termination proceedings).

have his court-appointed attorney present at this termination hearing.[11]

The FIA contends that *In re Hall*[12] is instructive in this case. In *Hall*, the trial court dismissed the mother's attorney from a dispositional review hearing after her attorney indicated that he did not know where his client was, he had not spoken to her in sixteen months, and he did not know "her wishes."[13] When asked to decide whether the trial court had a duty to appoint sua sponte an attorney for the mother, this Court concluded that a parent has "some minimum responsibility" to request and retain a court-appointed attorney because the court rule does not impose a duty on the court to act on its own initiative in this area.[14] Because the mother had effectively terminated her relationship with her attorney, dismissal was proper on the basis of waiver of the right to counsel.[15] Moreover, this Court also determined that this dismissal was not an error requiring reversal because the testimony presented at that dispositional review hearing was repeated at the termination hearing, at which time the mother was again represented by counsel.[16]

However, we conclude that *Hall* does not determine the outcome in this case. Critically, this issue on appeal does not concern whether the hearing referee had an obligation to appoint counsel for Weaver at

---

[11] See *Osborne, supra* at 606; *In re Cobb*, 130 Mich App 598, 600; 344 NW2d 12 (1983).

[12] *In re Hall*, 188 Mich App 217; 469 NW2d 56 (1991).

[13] *Id.* at 219.

[14] *Id.* at 222.

[15] *Id.*

[16] *Id.* at 222-223.

any time. The possible deprivation of counsel in this case also occurred at the termination hearing, not a dispositional review hearing, a factor the *Hall* Court found significant in its harmless-error analysis. Further, as far as we can tell from the very brief record, Weaver's attorney did not ask to be excused from the hearing, and she may have still assumed that she was representing Weaver at this hearing. The hearing referee may have dismissed her *solely* because Weaver was absent. There is no indication in the record that the hearing referee dismissed counsel for other *possibly* legitimate reasons, such as a sanction for her tardiness, a method of exerting control over the proceeding, or because the hearing referee believed that Weaver had severed his relationship with counsel.[17] On appeal, the FIA does not posit a legal theory or submit any authority that demonstrates that Weaver's attorney had an obligation to assert the right to be an active participant in the hearing in order for him to be entitled to counsel or preserve the issue for appeal. Nor would such an argument be logical, given that the hearing referee had already decided not to permit her to participate in the hearing and the general rule is that futile acts are rarely, if ever, necessary under the law.[18] Thus, we are at a loss to justify the hearing referee's decision to "dismiss" Weaver's attorney on the basis of the record before us. Yet, because the record is so brief, we cannot tell what effect this "dismissal" had on Weaver's right to coun-

---

[17] See MCR 5.915(B)(1)(c); MCL 712A.17c(4); MSA 27.3178(598.17c)(4).

[18] See *Turner v Lansing Twp*, 108 Mich App 103, 108; 310 NW2d 287 (1981) ("[T]he law will not require a citizen to undertake a vain and useless act.").

sel or even whether his attorney left after she was "dismissed."

We remand Weaver's case to the family court for an evidentiary hearing to assist us in determining whether Weaver was denied his right to counsel under MCR 5.915(B) at the June 30, 1998, termination hearing. The family court, not the hearing referee, shall take testimony and hear argument as appropriate to create a record adequate for our review of Weaver's appellate argument that he was denied his right to counsel at the termination hearing. If possible, that record shall include testimony or other evidence establishing whether Weaver's attorney remained in the room at the hearing after she was "dismissed," whether Weaver continued to have representation after that hearing, and any other factors that may indicate whether the hearing referee's "dismissal" affected Weaver's right to counsel in that or subsequent proceedings. Following the hearing, the family court shall make findings of fact and conclusions of law with regard to whether the hearing referee's "dismissal" denied Weaver his right to counsel.

Docket No. 220848 affirmed. Docket No. 220382 remanded for proceedings consistent with this opinion. We retain jurisdiction solely in Docket No. 220382.