# STATE OF MICHIGAN

# COURT OF APPEALS

In re MOBLEY, Minors.

UNPUBLISHED
October 14, 2014

No. 320414
Wayne Circuit Court
Family Division
LC No. 11-498425-NA

Before: STEPHENS, P.J., and TALBOT and BECKERING, JJ.

PER CURIAM.

J.A. Russell, the father of the minor children, appeals as of right from the trial court's order terminating his parental rights.[1] We affirm.

Before terminating a respondent's parental rights, the trial court must make a finding that at least one of the statutory grounds has been established by clear and convincing evidence.[2] This Court reviews orders terminating parental rights for clear error.[3] To be clearly erroneous, a decision must be more than maybe or probably wrong.[4] Clear error exists "if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses."[5]

The trial court did not clearly err in finding that MCL 712A.19b(3)(c)(*i*), (g), and (j) were established by clear and convincing evidence. These statutory grounds provide:

>    (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial

---

[1] MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continued to exist), (c)(*ii*) (other conditions have not been rectified), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood the child will be harmed).

[2] MCL 712A.19b(3); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010).

[3] *In re Mason*, 486 Mich at 152; MCR 3.977(K).

[4] *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

[5] *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

-1-

dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

*　*　*

> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

*　*　*

> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

In January 2011, Russell's two older children entered foster care after Russell was arrested for beating the children's mother with a pipe along with his fists and feet. The children's mother, who was pregnant with the couple's third child,[6] sustained injuries to her face, forearm, and back and blacked out during the beating. The two children, ages two years and four months at the time, witnessed the fight. The Department of Human Services obtained temporary custody of the children after filing a petition alleging that the parents failed to protect the children from harm because of physical neglect and a history of domestic violence, unstable housing, and mental health issues. At the adjudication, Russell admitted that he was living with the children's mother and the children during the January 2011 domestic violence incident and had failed to protect the children. He also admitted that he had a history of unstable housing. Russell further acknowledged that he was diagnosed with schizophrenia in 2009 and had stopped taking medication for that illness. The court acquired jurisdiction over the children and ordered the couple to comply and benefit from treatment plans and to have no contact with each other. Services included individual therapy, parenting classes, and domestic violence counseling to improve their parenting abilities, and parenting time. Both were to acquire emotional stability and obtain suitable housing and employment. Russell was to participate in a psychological evaluation.

The proofs showed that Russell, after nearly three years of services, failed to substantially comply with his case service plan. Failure to comply with a case service plan is evidence that returning a child to the parent "would cause a substantial risk of harm to the child's life, physical health, or mental well-being."[7] The extensive trial court record belies Russell's assertion on

---

[6] This child became a ward of the court shortly after her birth.

[7] MCL 712A.19a(5).

-2-

appeal that he benefited from his case service plan. Russell, who admittedly had a history of unstable housing, had failed to acquire an adequate legal source of income or adequate housing, instead living with various family members. At the time of the termination hearing, he was living in his sister's three-bedroom home with three other adults and five children. His financial resources were limited. At times, he had received social security benefits and earned some income as a tattoo artist. Russell had saved some money for independent housing, but was still short of funds to pay a security deposit and the first month's rent. Service providers tried to help Russell find housing and employment to no avail. As a result, the trial court reasonably concluded that Russell was unlikely to be able to provide housing and financial stability for the children within a reasonable time.[8]

Despite his claim to the contrary, Russell also failed to benefit from domestic violence counseling. After 14 months of rehabilitative services, he assaulted the children's mother again in March 2012. There was credible evidence that, during that assault, he put a gun to his three-year-old child's head. There was also testimony that he was combative and aggressive with service providers in the months preceding the November 2013 termination hearing. In early 2013, he threatened to hurt a staff member because she directed him to the appropriate area for eating during supervised parenting time. He also threatened to hurt his therapist after accusing him of inappropriately sharing information with his caseworker. According to Russell's psychiatric evaluation, he continued to show signs that he would harm others, especially the children's mother, if given the opportunity.

Russell also failed to adequately address his mental health issues. Russell had a lifelong history of serious mental health issues, beginning when he was 10 years old. By 2011, he had twice received inpatient psychiatric treatment. Following psychological and psychiatric evaluations, Russell was diagnosed with bipolar depression, intermittent explosive disorder, and possible schizoaffective disorder. He also showed signs of narcissistic personality and antisocial personality disorders. Russell had a poor working knowledge of common parenting skills and techniques and basic child development. His operational judgment was very limited. The evaluator concluded that Russell was unable to properly parent because he was emotionally unstable and not fully aware of his mental health needs. Recommendations included additional parenting and anger management classes, individual therapy, and psychotropic medication.

Sadly, the evidence showed that Russell did not complete individual therapy. He steadfastly refused to take medication offered to stabilize his moods until September 2013 when a termination hearing was imminent. Thus, the trial court did not clearly err in concluding that Russell's violent behavior would not be rectified within a reasonable time.[9]

---

[8] MCL 712A.19b(c)(*i*).

[9] *Id*. The trial court did not clearly articulate what other conditions existed that Russell failed to rectify pursuant to MCL 712A.19b(3)(c)(*ii*). Any error, however, is harmless because a least one statutory basis for terminating Russell's parental rights has been adequately proven. *In re Powers*, 244 Mich App 111, 118; 624 NW2d 472 (2000).

The proofs similarly showed that termination was proper under MCL 712A.19b(3)(g) and (j). Russell had unsuitable housing and was financially unstable through the duration of this case. He completed parenting classes and domestic violence counseling, but failed to show any benefit or improved parenting skills given his continued explosive behavior. There was sufficient proof that Russell would be unable to provide the children with proper care and custody within a reasonable time.[10] Also, the court did not err in finding that there was a reasonable likelihood that the children would be harmed if placed in Russell's care given the clear evidence of his brutal behavior.[11]

The trial court also did not clearly err in finding that termination was in the children's best interests. Once a statutory ground is established, the court must terminate parental rights if the court also finds that termination is in the children's best interests[12] by a preponderance of the evidence.[13] The trial court may consider various factors when making its best-interest determination, including "the child's bond to the parent,[14] the parent's parenting ability,[15] the child's need for permanency, stability, and finality,[16] and the advantages of a foster home over the parent's home.[17]"[18]

Russell argues unpersuasively that the trial court prematurely terminated his parental rights. Most importantly, Russell asserts that he had a great bond with his children. Although it was plain that Russell had a great love for his children, the proofs also showed that his bond with the children deteriorated as this case progressed because of his inappropriate behavior. The infant mental health specialist gave compelling testimony that the children's continued contact with Russell was emotionally harmful. The oldest child suffered extreme anxiety and panic attacks when separated from the foster parents. The second child was diagnosed with post-traumatic stress disorder. It was significant that the children's behavior improved dramatically when they were no longer interacting with Russell. Moreover, it was uncontroverted that the children had developed a very secure and safe bond with the foster parents who desired to adopt them. The trial court reasonably concluded that terminating Russell's parental rights was in the children's best interests because Russell was unlikely to rectify his chronic mental health issues

---

[10] MCL 712A.19b(g).

[11] MCL 712A.19b(j).

[12] MCL 712A.19b(5); MCR 3.977(H)(3).

[13] *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

[14] See *In re BZ*, 264 Mich App at 301.

[15] See *In re Jones*, 286 Mich App 126, 129-130; 777 NW2d 728 (2009).

[16] See *In re VanDalen*, 293 Mich App 120, 141-142; 809 NW2d 412 (2011).

[17] See *In re Foster*, 285 Mich App 630, 634-635; 776 NW2d 415 (2009).

[18] *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (footnotes added).

and violent, erratic behavior.[19]  Terminating Russell's parental rights allowed the children to be in a safe, stable, and secure environment.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Michael J. Talbot
/s/ Jane M. Beckering

---

[19] MCL 712A.19b(5); MCR 3.977(H)(3).