# STATE OF MICHIGAN

# COURT OF APPEALS

In re J J Hendrickson, Minor.

UNPUBLISHED
February 26, 2015

No. 322278
Wayne Circuit Court
Family Division
LC No. 12-506491-NA

Before: SERVITTO, P.J., and STEPHENS and M. J. KELLY, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court order terminating his parental rights to the minor child pursuant to MCL 712A.19b(3)(c)(i), (3)(g), (3)(h), and (3)(i). We affirm.

The trial court took jurisdiction over the minor child when he was less than one month old due to allegations that the child tested positive for cocaine and marijuana at birth, that the mother had a substance abuse history and had no provisions or suitable housing for the child, and because respondent-father (who had not yet established paternity) also had a substance abuse and criminal history and lacked stable independent housing. The child never resided with respondent. Respondent signed an affidavit of parentage and agreed to a treatment plan but, shortly after the proceedings were initiated, became incarcerated due to a parole violation and the commission of a new criminal offense. Respondent's earliest release date was February 2014 and his maximum release date was in 2031. The trial court terminated respondent's parental rights after a trial held approximately two years after the trial court took jurisdiction over the minor child. The child's mother voluntarily released her parental rights to the minor child.

Respondent now asserts that the court clearly erred in finding that the statutory grounds for terminating his parental rights had been established under MCL 712A.19b(3)(c)(i), (3)(g), or (3)(h). A court may terminate a respondent's parental rights if one or more of the statutory grounds for termination found in MCL 712A.19b(3) have been proven by clear and convincing evidence. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). The trial court need only find that one ground has been proven in order to terminate parental rights. *In re Powers Minors*, 244 Mich App 111, 119; 624 NW2d 472 (2000). "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App at 40.

This Court reviews both the trial court's ruling that a statutory ground for termination has been established and its ruling that termination is in the children's best interests for clear error. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011); see MCR 3.977(K). "A finding

-1-

of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296; 690 NW2d 505 (2004).

MCL 712A.19b provides in relevant part as follows:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> (h) The parent is imprisoned for such a period that the child will be deprived of a normal home for a period exceeding 2 years, and the parent has not provided for the child's proper care and custody, and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> (i) Parental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and prior attempts to rehabilitate the parents have been unsuccessful.

The crux of respondent's arguments on appeal is that the child came under the jurisdiction of the trial court primarily because of the actions of the mother and that because he was incarcerated, the trial court never considered his future ability to care for the minor child by voluntarily placing the child in the legal custody of his relatives during his period of incarceration. We disagree.

In *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010), our Supreme Court held that "the state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." Thus, even if a parent is incarcerated, the state must do its best to ensure that the parent is present, in some manner, in proceedings. Unlike *In re Mason*, in this case respondent was afforded a meaningful opportunity to participate in the proceedings involving the minor

-2-

child. He was granted telephone presence and, when his presence couldn't be secured, proceedings were adjourned.

However, ensuring a parent's opportunity to participate in proceedings is not the only duty of the state. As articulated in *In re Mason*:

> If the court orders placement of a child outside the child's home, the DHS must prepare an initial services plan within 30 days of the child's placement. MCL 712A.13a(8)(a). Before the court enters an order of disposition, the DHS must prepare a case service plan, which must include, among other things, a "[s]chedule of services to be provided to the parent, child, and if the child is to be placed in foster care, the foster parent, to facilitate the child's return to his or her home or to facilitate the child's permanent placement." MCL 712A.18f(3)(d). "If a child continues in placement outside of the child's home, the case service plan shall be updated and revised at 90–day intervals . . . ." MCL 712A.18f(5). Further, at each review hearing, the court is required to consider, among other things, "[c]ompliance with the case service plan with respect to services provided or offered to the child and the child's parent, . . . whether the parent . . . has complied with and benefited from those services," and "[t]he extent to which the parent complied with each provision of the case service plan, prior court orders, and an agreement between the parent and the agency." MCL 712A.19(6)(a) and (c). The court may then modify the case service plan, including by "[p]rescribing additional services" and "[p]rescribing additional actions to be taken by the parent . . . to rectify the conditions that caused the child to be placed in foster care or to remain in foster care." MCL 712A.19(7)(a) and (b).[Id. at 753-754].

Here, respondent was made part of the service plan and was required to undergo substance abuse therapy, individual therapy, and parenting classes. Testimony at trial established that, in contrast to *In re Mason*, 486 Mich at 156-158, DHS in this matter contacted the facilities at which respondent was incarcerated to discuss his necessary classes and therapy and maintained contact with respondent. While respondent completed substance abuse counseling classes while incarcerated, he was wait-listed for parenting classes at the first facility and was transferred to another facility, due to his own misconduct, before he could begin those classes. It was unclear whether any of the four correctional facilities where respondent was incarcerated during the proceedings offered individual therapy. DHS called respondent's second correctional facility once he was transferred and respondent was again wait-listed for parenting classes due to his unsatisfactory behavior at that correctional facility. Apparently, the facility would not provide respondent with services until his behavior was in order. Respondent was transferred temporarily to a third correctional facility, where he received no services, and then to his fourth and final facility, with which DHS had no contact regarding services as it was their understanding that respondent had recently had a parole hearing and would likely be released on parole relatively soon.

Respondent testified that at the time of the termination trial, he had been advised that he would be released on parole in July 2014, but would be released into a residential substance abuse treatment program where he would have to stay for six months. Upon successful completion of the six-month program, he would be sent to a halfway house for a term of

anywhere from 30 days to six months. Respondent acknowledged that his July 2014 release date was not guaranteed, in that if he misbehaved in prison prior to that date, he could remain in prison. Respondent further acknowledged that if he failed to complete the six-month residential substance abuse treatment program, or violated its terms, he would be sent back to prison. Respondent testified that he had a problem with cocaine prior to incarceration and that he absconded from his prior parole.

From the above, it is clear that while respondent completed the substance abuse classes offered while incarcerated, parenting classes were withheld from him due to his misconduct while incarcerated. This misconduct included refusing drug screens and the possession of a knife. Respondent's own behavior thus prevented him from participating in at least one requirement of his treatment plan and renders doubtful his commitment to addressing his substance abuse issues. Moreover, while respondent anticipated being released from prison in July 2014, any misbehavior could have prevented his release, making parole a possibility rather than a certainty. Even upon his initial release, respondent would still be a resident of a prison facility for a minimum of seven additional months, preventing him from providing suitable housing for himself or the minor child until at least February of 2015. And, given his pattern of behavior while in and out of prison, respondent's ability to successfully complete his sentence and parole is questionable.[1]

In short, the minor child never resided with respondent and saw him for only the first few weeks of his life due to respondent's actions. The minor child has not seen respondent since that time and would be just shy of three years old before he saw respondent again. Respondent specifically testified at trial that he did not know the child. There is no bond between the child and respondent.

Respondent was also unable to comply with at least one requirement of his service plan due to his inability to control his behavior while imprisoned. His release from prison on parole is a possibility rather than a certainty and thus his ability to care for the minor child within a reasonable time is also a mere possibility. Of the three requirements respondent was required to fulfill while in prison, respondent thus was possibly unable to complete one through no fault of his own (individual therapy), completed one requirement with questionable commitment (substance abuse therapy) and failed to complete one requirement because of his poor behavior while incarcerated (parenting classes).

In determining whether there is a reasonable likelihood that the conditions that led to adjudication will be rectified within a reasonable time, the reasonable time properly includes not only how long it will take for the parent to improve conditions but also how long the child can wait for the improvement. *In re Dahms*, 187 Mich App 644, 647-648; 468 NW2d 315 (1991). Because respondent's improvement of his conditions is speculative, at best, and the minor child will be three years old, at a minimum, with absolutely no bond to respondent by the time

---

[1] DHS notes in its appeal brief that respondent was not, in fact, released on parole in July 2014 as anticipated and remains incarcerated. A check of OTIS on January 27, 2015, shows that respondent remains incarcerated as of that date.

respondent would be in a position to begin to comply with the remaining requirements of his treatment plan or establish a relationship with the child, the trial court's findings that the statutory grounds found in MCL 712A.19b(3)(c)(i) and (3)(g) were proven by clear and convincing evidence were not clearly erroneous.[2]  For the same reasons, and because the nearly three year old child requires permanency and stability, the trial court properly found that termination was in the child's best interests.

Respondent contends that the minor child's placement with relatives nevertheless weighs against termination under MCL 712A.19a(6), which provides:

> If the court determines at a permanency planning hearing that a child should not be returned to his or her parent, the court may order the agency to initiate proceedings to terminate parental rights.  Except as otherwise provided in this subsection, if the child has been in foster care under the responsibility of the state for 15 of the most recent 22 months, the court shall order the agency to initiate proceedings to terminate parental rights.  The court is not required to order the agency to initiate proceedings to terminate parental rights if 1 or more of the following apply:
>
> (a) the child is being cared for by relatives.

Notably, the above statute indicates that if the child is being cared for by relatives, the court is not *required* to initiate termination proceedings.  But, the trial court may still do so if the circumstances warrant termination.  In this case, the trial court properly found that MCL 712A.19b(3)(c)(i) and (3)(g) had been established by clear and convincing evidence.  We fully recognize *Mason*'s holding that "[t]he mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination."  In this case, however, there are more circumstances present than simply incarceration.  Namely, respondent never had a relationship with or cared for the minor child who will be nearly three by the time respondent is able to be involved with him, and respondent's conduct while in prison prevented him from complying with at least one service that was both required of him under his treatment plan and available to him in prison.  Further, respondent testified that he did not have any family for family support, was unsure what his employment would be upon his release (but was certain the Department of Corrections would provide him with employment while he was in the halfway house), and it is unclear, contrary to *Mason*, that respondent's release from prison is imminent.

In addition, respondent did not voluntarily place the minor child with a family member.  Rather the minor child was placed with his maternal aunt and uncle by order of the court and respondent expressed complete satisfaction with the care the child was receiving.  Respondent testified that "I'm not—I'm not here to uproot [the minor child] from his house 'cause I—who knows, in the future, maybe I may not be able to provide stability."  Respondent expressed that

---

[2] Because only one ground for termination need be proven, we need not consider whether the trial court's findings with respect to the other stated grounds for termination were clearly erroneous.  *In re Powers Minors*, 244 Mich App at 119.

"If I could just get weekends seeing him, I'm content with that." Thus, it is not clear that respondent even wishes or plans to be the primary caregiver for the minor child even if he were to be successfully paroled.

Affirmed.

/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Michael J. Kelly