*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. B. COOKSON, Minor.

UNPUBLISHED
October 5, 2023

No. 364097
Livingston Circuit Court
Family Division
LC No. 2019-016076-NA

Before: GLEICHER, C.J., and JANSEN and RICK, JJ.

PER CURIAM.

Respondent-mother appeals as of right the November 15, 2022 order terminating her parental rights to the minor child under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood of harm if returned to parent). We reverse and remand.

## I. FACTUAL BACKGROUND

On December 10, 2019, petitioner, the Department of Health and Human Services (DHHS), petitioned the court to remove AC and two of his half-siblings, LN and JH,[1] from mother's care. The petition, which alleged improper supervision and medical neglect as grounds for taking jurisdiction, was filed after a Children's Protective Services (CPS) investigation revealed, among other things, that JH had significant untreated burns when respondent dropped him off for parenting time with his father. Mother waived a finding of probable cause at the preliminary hearing and the court authorized the petition.[2] AC was placed in a licensed foster care home and mother was provided supervised parenting time.

---

[1] LN and JH were placed with their legal fathers. The supplemental petition did not involve LN and JH.

[2] Respondent initially identified BC as the child's putative father, but DNA testing later confirmed that BC was not AC's biological father. Further DNA testing identified another man as AC's biological father. That man declined to establish himself as AC's legal father.

In February 2020, mother entered a plea to the allegations in an amended petition. The amended petition stated that mother was evicted from her home in Livingston County in October 2019 and moved to Alger County to reside with her mother and stepfather, both of whom were on the Central Registry. Mother left AC in their care when she returned to Livingston County. Regarding JH's injuries, the amended petition indicated that JH had significant burns to his right forearm, right bicep, left fingertips, middle finger, and index finger when mother dropped him off with his father. Mother told JH's father that JH had pulled a cup of hot chocolate off of a table and spilled it on himself and that she had taken JH for medical treatment of the burns in Alger County. However, when JH's father took him to the emergency room, a doctor noted that JH's multiple burns appeared to have taken place on different occasions and that the more serious arm and bicep burns could have been from a scalding water incident. The doctor noted that the situation was "indicative of neglect due to a lack of supervision of such a young child by this mother of such a young child having access to hurt himself in this way." The petition indicated that mother later admitted to CPS staff that she had never taken JH for medical care for the burns on multiple occasions. Instead, she followed the advice of her mother, a former nurse, and treated the burns with diaper rash ointment.

Mother also admitted that she had a prior CPS history, including contact with CPS on March 13, 2013, when LN was born positive for marijuana. Her history also included CPS contact on September 22, 2016, for "smoking marijuana around the children and abusing Adderall," and on April 17, 2018, when she tested positive for marijuana while pregnant with JH. The petition also noted that JH's meconium was positive for marijuana and opiates, and that mother had been prescribed opiates by hospital staff. The court accepted mother's plea and exercised jurisdiction over AC.

At the initial disposition hearing, a caseworker noted that AC suffered from significant behavioral issues and recommended an early childhood assessment and a trauma assessment be conducted. The court adopted DHHS's recommendations in the case service plan (CSP) and ordered mother to comply with and benefit from the CSP, which included a psychological evaluation, a substance abuse evaluation, drug and alcohol testing eight times per month, obtaining and maintaining legal safe and appropriate housing, obtaining and maintaining a legal source of income, and parenting education services.

Mother initially complied with the CSP. By the first review hearing in June 2020, she had completed a psychological evaluation with Dr. Douglas Ruben. Dr. Ruben determined that mother had parental competency. He diagnosed mother with social anxiety disorder, mild cannabis use disorder, and obsessive-compulsive disorder. He recommended therapy to achieve the goals of anxiety management, relapse prevention, reduction of perfectionism, and enhanced child management steps. He opined that mother remained at high risk of cannabis recidivism until anxiety management skills were taught and practiced regularly. Mother also completed a substance abuse assessment. She reported that she had a history of ongoing cannabis use "usually characterized by weekly use or problematic use even if used sporadically" and indicated that she had never maintained continuous abstinence from alcohol and drugs for a period of even two weeks. The assessor recommended twice-weekly alcohol and drug screens for a minimum of three months so that mother could prove that she was able to abstain from alcohol and nonprescribed drugs. The assessor also recommended that mother complete a substance and mental health

outpatient program to assist in maintaining her recovery and provide behavioral therapy, as well as a weekly support group.

Mother's drug and alcohol testing was paused in March 2020 because of the COVID-19 pandemic. The record indicates that mother was informed that testing would resume on June 1, 2020, but she failed to appear for testing on that date. She was told to call the notification system daily to see if she was required to test. A caseworker reported that mother obtained a two-bedroom home and that a home study had been completed. Mother also completed an online parenting class in April 2020. Dr. Ruben was providing individual counseling for respondent. The court gave DHHS discretion to allow unsupervised parenting time if mother was drug and alcohol testing and screening negative.

Mother's compliance with the court's order for drug and alcohol testing was minimal. When she did test, the screens were often positive for marijuana. DHHS's continued concern from the outset of the case was that mother's marijuana use contributed to her lack of supervision of AC and his siblings, and so substance abuse was identified as a barrier to reunification. Despite constant admonition from the court of the need for testing to demonstrate that AC would not be harmed if returned to her care, mother failed to comply.

In July 2021, DHHS filed a supplemental petition seeking to terminate mother's parental rights to AC. Because of various delays, a hearing on the supplemental petition did not begin until June 17, 2022. In the meantime, mother continued to be inconsistent with calling the daily notification system for testing. She continued to test positive for marijuana when she did test. She was dishonest with Dr. Ruben about her missed tests and her marijuana use, expressing to Dr. Ruben that DHHS approved the use of marijuana at a low dose and that DHHS was "very flexible" with her testing schedule. In November 2021, mother stopped attending counseling with Dr. Ruben. The supportive visitation program that was supervising in-home parenting time reported that mother was prepared for visits, engaged, and nurturing during the visits. It also reported that the home smelled of marijuana, although mother was not observed using marijuana during the visits.

At the conclusion of the termination hearing, the trial court found clear and convincing evidence that statutory grounds existed to terminate mother's parental rights under MCL 712A.19b(3)(c)(i), (g), and (j). The trial court also determined that petitioner established by a preponderance of the evidence that termination of parental rights was in AC's best interests.

## II. ANALYSIS

## A. STATUTORY GROUNDS

Mother first argues that the trial court clearly erred by finding, by clear and convincing evidence, that statutory grounds for termination existed. We agree.

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination." *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding is clearly erroneous if, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made." *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016) (quotation marks and citation omitted).

Under MCL 712A.19b(3)(c)(*i*), a trial court may terminate a respondent's parental rights if "182 or more days have elapsed since the issuance of an initial dispositional order" and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." "This statutory ground exists when the conditions that brought the [child] into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services[.]" *White*, 303 Mich App at 710 (quotation marks and citation omitted). A parent's failure to resolve substance abuse issues that negatively affect his ability to parent or cause a risk of harm to a child can establish sufficient grounds for termination. *In re Richardson*, 329 Mich App 232, 253-256; 961 NW2d 499 (2019). See also *In re Frey*, 297 Mich App 242, 244-245; 824 NW2d 569 (2012).

In this case, the initial disposition order was entered on March 9, 2020, and mother's parental rights were terminated on November 15, 2022. Thus, far more than 182 days elapsed since the initial disposition order was entered. The conditions that led to adjudication, as reflected in mother's admissions to the allegations in the amended petition, were, in part, neglect due to lack of parental supervision, failure to provide JH with proper medical care for the burns, and lack of housing. Substance abuse was identified as a potential reason for mother's failure to properly supervise AB and his siblings, and this lack of parental supervision was also identified as a barrier to safe parenting.

In determining that termination was warranted under MCL 712A.19b(3)(c)(*i*), the trial court focused on mother's failure to fully adhere to the CSP and follow the recommendations from the psychological evaluation and substance abuse assessment, particularly the recommendations for drug and alcohol testing and for mental health and substance abuse counseling. The court found that mother did not benefit from counseling, noting that she engaged in counseling for a period of time, but did not attend any sessions from November 30, 2021 until June 7, 2022. The court found that the timing of her reengagement in counseling was suspect because the termination hearing was scheduled to begin 10 days later. The court also had concerns about statements that mother allegedly made to Dr. Ruben about her use of edibles and her drug testing requirements, and Dr. Ruben's belief that the statements were indicative of her failure to take responsibility for her actions.

Regarding her failure to address her substance abuse issues, the court observed that mother testified that she was not addressing substance abuse in counseling because she did not have a substance abuse problem. The court opined that this showed a lack of insight and failure to benefit from services, particularly given that mother admitted during her plea to a history of substance abuse and continued to use marijuana in violation of court order and her CSP. The court could not determine whether mother was sober because she missed a significant number of drug screens. The court found that mother's explanation for her failure to test as ordered lacked credibility, and that her choice not to prioritize testing was made despite her awareness that testing was an important component of the reunification process. The court further found that mother's

> use of marijuana is problematic as there is significant concerns it has and will continue to impair [her] parenting ability. [Mother] has a history of using marijuana while [AC] and his siblings were in her care. During that time, they were subjected to unsafe parenting, improper supervision, and neglect. [Mother] was aware her ongoing use of marijuana was a concern for DHHS, the LGAL, and the Court

-4-

relating to her ability to act as a safe and appropriate parent. While [mother] claimed her use of marijuana was related to pain, she did not obtain a medical marijuana card nor establish that marijuana was recommended to her by a physician with whom she has a bona fide doctor/patient relationship. [Mother] testified that she recently obtained a card, but has not provided the card or corresponding documentation from the prescribing physician to the Court or parties. The fact that recreational marijuana is now a legal substance in Michigan does not prevent it from being considered as a factor in a decision to terminate parental rights. The Court continues to maintain significant concerns not only regarding [mother]'s use of marijuana, but the detrimental impact of that use on her ability to act as a safe, present, and stable caregiver for [AC].

These concerns are further compounded by [mother]'s own testimony that her brain does not function in such a way as to deal with issues outside what is needed for her basic daily survival. The Court is hard-pressed to see how ongoing and at times daily use of marijuana does not have a negative impact on [mother's] cognitive functioning, especially when considering Dr. Ruben's diagnosis of a cannabis use disorder. [AC]'s special needs require heightened supervision and behavioral management from a caregiver who is stable and clear-minded. Despite [mother]'s claims that she will do anything for him, the evidence actually reflects she has continued to prioritize her own needs and substance use over doing what is necessary to achieve reunification.

The court also found that mother failed to rectify her lack of parenting skills. The court noted that during the early stages of the case, DHHS was given discretion to allow unsupervised parenting time, but parenting time was returned to supervised because of mother's failure to comply with court orders and her CSP. The court found that mother missed visits with AC throughout the case. The court believed that the missed visits showed mother's failure to prioritize AC and the work necessary to improve her parenting skills. It noted that a caseworker testified that mother successfully completed the Orchard supportive visitation program, but that a concern existed because she did not continue to demonstrate those skills at later visits.

With respect to housing, the court found:

The conditions relating to inappropriate housing have also yet to be rectified. While [mother] does currently maintain housing, [a caseworker] testified that [AC]'s room is not appropriate as it is covered in cat feces, urine, and vomit. [Mother] reported she will be able to clean and fix the cat issue, however, no evidence has been presented to demonstrate she has done so. [The caseworker] indicated that once the issue is corrected, another home inspection would need to be completed to determine the appropriateness of this housing.

The court found that there was no reasonable expectation that mother would be able to rectify these conditions within a reasonable time considering the child's age. AC had been in foster care since December 2019. The court found that in the more than two years since disposition respondent

demonstrates inconsistent engagement and lack of benefit from services. She failed to attend the majority of her drug/alcohol screens and tested positive on nearly all of them she did complete. [Mother] stopped attending sessions with Dr. Ruben from November 2021 until June 2022 and re-engaged less than two weeks prior to the start of the termination hearing. She missed parenting time due to being incarcerated and for vacation. The evidence clearly shows that despite well over two years to engage in services, [mother] made very little progress in doing so. [AC] is just six[3] years old and in great need of permanency and stability. [Mother]'s credibility is questionable given her statements to Dr. Ruben and failure to take responsibility for the reasons [AC] came into care. It is clear [mother] is unlikely to rectify these conditions within a reasonable time, if at all. Accordingly, petitioner has established by clear and convincing evidence a sufficient basis to terminate [respondent's] parental rights pursuant to MCL 712A.19b(3)(c)(*i*).

Despite all of this evidence, the trial court overlooked that mother did make steps toward complying with the CSP. Mother successfully completed the Orchard's Children Program and maintained employment. Regarding parenting time, mother's visitation coaches reported that mother was encouraging, nurturing, and engaged in play with AC in a positive manner. She appeared to be adept at managing her behavior, implementing a safety plan, and helping AC develop self-esteem and a sense of independence. All of these factors suggest that mother was entirely able and willing to rectify the barriers to her reunification with AC. Regarding housing, there was an issue with AC's bedroom being unsuitable for him due to the presence of cat feces, vomit, and urine, but mother indicated that she would fix this problem. In all other respects, mother's housing was safe and adequate for children, and there was no evidence presented to suggest that the room could not be cleaned and reassessed for appropriateness in a short amount of time. Regarding employment, there was no dispute that mother made efforts to maintain employment throughout the proceedings, consistent with the terms of the CSP.

Above all, the trial court's concern about reunification appeared to focus on respondent's unwillingness to regularly submit to drug testing or to stop using marijuana. Mother reported that she uses marijuana for medical reasons, including rheumatoid arthritis. Although the trial court disliked mother's use of marijuana, there is no concrete evidence that her marijuana use actually interfered with her ability to parent AC or properly care for him. To the contrary, the evidence overwhelmingly indicates that there were no significant concerns about marijuana use during mother's parenting time visits and plenty of evidence that mother appropriately cared for AC during those visits. The trial court's overemphasis on mother's marijuana consumption led it to ignore that there was not a demonstrated risk of harm to AC caused by her use of marijuana. Trial courts must remember that "[c]hild protective proceedings are not criminal proceedings," and unlike criminal proceedings, the "purpose of child protective proceedings is the protection of the child," not to determine the parent's guilt or innocence. *In re Brock*, 442 Mich. 101, 107-108, 499 NW2d 752 (1993) (emphasis added). Indeed, "[t]he juvenile code is intended to protect children from unfit homes rather than to punish their parents." *Id*. at 108. Additionally, it must be noted

---

[3] The trial court misstated AC's age; AC was eight years old when the trial court issued its ruling terminating mother's parental rights.

that the termination of mother's parental rights was founded in the doctrine of anticipatory neglect, due to the improper supervision and medical neglect of AC's half-siblings. Although it was suggested that mother's marijuana use was related to these issues, the record does not fully substantiate this presumption. In the absence of such evidence, "[d]rug use alone . . . cannot justify termination solely through operation of the doctrine of anticipatory neglect." *In re LaFrance Minors*, 329 Mich App 713, 731; 858 NW2d 143 (2014). Mother has made positive steps toward reunification, and there is no demonstrated risk of harm from her use of marijuana. Accordingly, we conclude that the trial court erred by finding that clear and convincing evidence existed to support terminating mother's parental rights under MCL 712A.19b(3)(c)(*i*).

The same is true when it comes to the trial court's findings under MCL 712A.19b(3)(g) and (j). There is no evidence that mother's use of marijuana interfered with her ability to parent AC, suggesting that clear and convincing evidence did not exist to support terminating her parental rights under MCL 712A.19b(3)(g). More importantly, there is no evidence that mother currently presents a risk of harm to AC if he were to be returned to her care. Mother made great strides toward learning how to appropriately parent and care for AC, and she has maintained appropriate housing and employment. Furthermore, we reiterate that there is no evidence that mother's marijuana use presents a current risk of harm to AC. Accordingly, we conclude that there was not clear and convincing evidence to support terminating mother's parental rights under MCL 712A.19b(3)(j). The trial court clearly erred by finding otherwise.

B. THE MICHIGAN REGULATION AND TAXATION OF MARIHUANA ACT

Related to her statutory-basis argument, mother next argues that the trial court violated the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq*., by requiring her to cease using marijuana throughout the proceedings, and by relying on her marijuana use when terminating her parental rights. We disagree with the argument that the trial court was not permitted to address mother's marijuana use in making its ruling, but ultimately conclude that the trial court reached the incorrect result by overemphasizing the role that mother's marijuana use played in her ability to parent AC.

The MRTMA provides, in pertinent part: "A person shall not be denied custody of or visitation with a minor for conduct that is permitted by this act, unless the person's behavior is such that it creates an unreasonable danger to the minor that can be clearly articulated and substantiated." MCL 333.27955(3). The plain language of this statute confirms that if a person's use of marijuana creates an unreasonable danger to a minor "that can be clearly articulated and substantiated," the person can be "denied custody of or visitation with a minor." This conclusion is consistent with this Court's consideration of an analogous issue, namely, a parent's alcohol use in child protective proceedings. Although alcohol use is legal for persons over 21 years of age, the abuse of alcohol can be grounds for termination of parental rights. See, e.g., *In re Powers*, 244 Mich App 111, 119; 624 NW2d 472 (2000). The relevant inquiry is whether use of the substance will have a negative effect on a parent's ability to parent, or will cause a risk of harm to the child. *Richardson*, 329 Mich App at 252.

Substance abuse was identified as a barrier to reunification. Mother admitted that she had a CPS history involving marijuana use. She was diagnosed with mild cannabis use disorder, and one of the goals from her psychological evaluation was relapse prevention. Additionally, mother's

substance abuse assessment recommended drug and alcohol testing to prove that she was able to abstain from alcohol and nonprescription drugs. The trial court severely faulted mother for declining drug testing and overwhelmingly relied on mother's marijuana use in terminating her parental rights. The trial court pointed to the fact that AC's half-sibling suffered serious burns on more than one occasion while in mother's care, and that mother did not seek medical attention for the burns. It was effectively presumed that mother's marijuana use was directly related to the improper supervision. However, substance abuse was not identified as a ground for taking jurisdiction in the petition in this case, and no direct causal link between mother's marijuana use and the improper supervision of AC and his siblings was ever established. Instead, the trial court appeared to object to all marijuana use, and overemphasized the effect that mother's marijuana usage might have on her ability to parent AC in an attempt to link it to the original grounds laid out in the petition, including improper supervision and medical neglect. But in doing so, the court never "clearly articulated and substantiated" that mother's marijuana use created an "unreasonable danger" to AC, MCL 333.27955(3), particularly given that mother's parenting time visits with AC were overwhelmingly positive and Dr. Ruben concluded that mother had parental competency. Thus, although the trial court did not violate the MRTMA by considering mother's marijuana use in determining whether termination was appropriate, its conclusion that marijuana use was related to the issues that brought AC into care was speculative, and its findings were insufficient to support the conclusion that marijuana use presented a barrier to her reunification with AC. Accordingly, the order terminating mother's parental rights must be reversed.[4]

## III. CONCLUSION

Mother has successfully shown that the trial court erred by finding that statutory grounds supported the termination of her parental rights and that termination was in AC's best interests. Furthermore, although the trial court did not violate the MRTMA by considering mother's marijuana use in making its statutory-bases determination, we again reiterate that it ultimately reached the incorrect result by overemphasizing the role that marijuana played in mother's ability to properly parent AC.

We reverse and remand for reinstatement of mother's parental rights to AC. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michelle M. Rick

---

[4] In light of our decision on the statutory grounds, we find it unnecessary to address mother's additional argument that termination of her parental rights was not in AC's best interests. Were we to address the issue in full, however, we would conclude that the trial court erred in finding that termination of respondent's parental rights was in AC's best interests. Our conclusion on this point is founded on much of the same reasoning supporting our analysis of whether there existed statutory grounds for termination in this case.