# STATE OF MICHIGAN

# COURT OF APPEALS

In re A. ZANE, Minor.

UNPUBLISHED
July 14, 2015

No. 324872
Livingston Circuit Court
Family Division
LC No. 2013-014481-NA

Before: O'CONNELL, P.J., and OWENS and M. J. KELLY, JJ.

PER CURIAM.

Respondent-father, T. Zane, appeals as of right the trial court's order terminating his parental rights to his minor son under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (lack of proper care and custody), (j) (risk of harm to the child), and its finding that termination was in the child's best interests. We affirm.

## I. FACTS

In May 2013, the Department of Health and Human Services (the Department)[1] petitioned for protective custody of the child. The Department alleged that the child was not safe because Zane and the child's mother had "substance abuse and mental health issues" that "severely impact[ed] their ability to properly parent the children." The Department also alleged that Zane lacked income and adequate housing, and the child's mother left the children without proper custody. Zane pleaded responsible to the allegations in the petition, and the child was eventually placed with Zane's parents, the child's paternal grandparents.

Throughout the pendency of the case, Zane regularly visited the child. However, he failed to comply with drug screens, tested positive for controlled substances, and did not maintain adequate housing. The Department initially petitioned to terminate Zane's parental rights in April 2014, but the parties stipulated to withdraw the petition in July 2014 after Zane began to show progress with services. After the termination petition was withdrawn, Zane was evicted from his home, became unemployed, no longer had transportation, and only partially complied with drug screens. In October 2014, the Department again petitioned to terminate Zane's parental rights.

---

[1] Formerly the Department of Human Services.

At the termination hearing, Victoria Buursma, the child's foster care worker, testified that Zane had not complied with or benefited from services. According to Buursma, Zane was diagnosed with bi-polar affective disorder and alcohol and opioid dependence, and he did not demonstrate consistency with drug testing or counseling. "There were timeframes when Mr. Zane would screen and there was timeframes where he[] wouldn't screen," and Buursma believed that Zane was still addicted to substances. Zane also had failed to apply for Medicaid, cash assistance, food assistance, or housing assistance. In July 2014, Zane began showing some compliance with stability portions of his service plan and Buursma referred Zane to a family reunification plan, but then Zane was evicted and "everything started kind of falling apart from there." According to Buursma, Zane continued to have issues with substance abuse, housing, income, parenting, and domestic violence.

Zane admitted that he drank regularly, abused alcohol, and had become addicted to painkillers, but he maintained that these were no longer issues. Zane admitted that he failed to comply with drug screening between February and August 2014. He testified that he had transportation issues. Zane also admitted that he had an unstable housing situation and was living in a home without heat at the time of the termination hearing. Zane believed that, given six more months, he would be able to provide the child with proper care and custody.

According to the grandmother, Zane visited the child regularly, and Zane and the child enjoyed playing videogames, going to the movies, going to the park, and going for walks. Notably, the child's lawyer-guardian ad litem argued against termination, contending that the grandparents' home was a stable environment that included both the child and Zane.

The trial court found that the Department proved MCL 712A.19b(3)(c)(*i*), (g), and (j), and that terminating Zane's parental rights was in the child's best interests. It found that Zane failed to comply with substance abuse testing, inconsistently attended treatment, demonstrated a lack of stability, and was unable to provide proper care and custody for the child. It also found that Zane's substance abuse and mental health conditions posed a risk to the child.

Considering the child's best interests, the trial court acknowledged that the child and Zane had a strong, loving bond. It also acknowledged that the Department had placed the child with Zane's parents. However, it found that termination was in the child's best interests because Zane failed to comply with and benefit from his service plan and could not provide for the child's basic needs, for shelter, stability, and permanence. The trial court also found that it was very likely that the child would be adopted by his grandparents and that it was in the child's best interests to have continued contact with Zane.

## II. STANDARDS OF REVIEW

This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination. MCR 3.977(K); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). We also review for clear error the trial court's determination of the child's best interests. MCR 3.977(K); *In re Trejo Minors,* 462 Mich 341, 356; 612 NW2d 407 (2000). A finding is clearly erroneous when this Court is definitely and firmly convinced that the trial court made a mistake. *Mason*, 486 Mich at 152.

## III. STATUTORY GROUNDS

Zane contends that the trial court clearly erred when it found that statutory grounds for termination existed because Zane made at least some progress with his case service plan. We disagree.

MCL 712A.19b(3)(c)(*i*) provides that the trial court may terminate a parent's rights if there is clear and convincing evidence that

> [t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

This statutory ground exists when the conditions that brought the children into foster care continue to exist despite "time to make changes and the opportunity to take advantage of a variety of services." See *In re Powers Minors*, 244 Mich App 111, 119; 624 NW2d 472 (2000).

In this case, Zane admitted allegations that he had mental health and substance abuse issues, lacked stable housing, and had no means to support the child. Throughout the pendency of the proceeding, Zane failed to consistently comply with the drug screening and counseling designed to help him address his mental health and substance abuse issues. He was evicted in July 2014, was homeless for a time, and was living in a house without heat at the time of the termination hearing. Zane partially complied with services, but he did not consistently participate and Buursma testified that he did not benefit from them. And while Zane testified that he could comply within the next six months, his history of noncompliance demonstrated otherwise. We are not definitely and firmly convinced that the trial court erred when it found that Zane would be unable to rectify these conditions within a reasonable time.

MCL 712A.19b(3)(g) provides that the trial court may terminate a parent's rights if

> [t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

MCL 712A.19b(3)(j) provides that the trial court may terminate parental rights if

> [t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court may properly consider the parent's mental health and substance abuse conditions when determining the likelihood of harm to the child if returned to the parent's home. See *In re AH*, 245 Mich App 77, 87; 627 NW2d 33 (2001). A parent's failure to comply with his or her service plan is evidence that the parent will not be able to provide the child with proper care and custody and that the child may be harmed if returned to the parent's home. *In re White*, 303 Mich App 701, 710-711; 846 NW2d 61 (2014).

In this case, Zane had documented mental health and substance abuse issues. Zane failed to comply with drug screening and counseling, failed to address his issues, and his lack of appropriate housing demonstrated that he could not provide the child with proper care and custody. Similarly, because Zane could not meet the child's basic need for shelter with adequate heat, there was a reasonable likelihood that the child would be harmed if the trial court returned him to Zane's care. We are not definitely and firmly convinced that the trial court made a mistake when it found that Zane's failure to participate in and benefit from services supported termination under these grounds.

## IV. THE CHILD'S BEST INTERESTS

Zane contends that the trial court clearly erred when it found that terminating his parental rights was in the child's best interests because he had a strong, positive bond with the child and made progress on his service plan. We disagree.

The trial court must order the parent's rights terminated if it finds from a preponderance of evidence that termination is in the child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012); *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013). The trial court should weigh all the evidence available to determine the child's best interests. *Trejo*, 462 Mich at 356-357.

To determine whether termination of a parent's parental rights is in a child's best interests, the court should consider a wide variety of factors that may include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The trial court may also consider "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714.

In this case, it is undisputed that Zane and the child were strongly bonded and loved each other. The trial court considered this factor when determining the child's best interests. The trial court also weighed the child's placement with Zane's parents in Zane's favor. However, it determined that the child's needs for permanence and stability outweighed these positive factors. It found that the child was very likely to be adopted, which also weighed in favor of terminating Zane's parental rights. Finally, the trial court considered Zane's lack of progress with his case service plan and his unstable housing. This tended to demonstrate that Zane would not be able to meet the child's basic needs. Considering the balance of the factors, we are not definitely and firmly convinced the trial court made a mistake when it found that terminating Zane's parental rights was in the child's best interests.

We affirm.

/s/ Peter D. O'Connell
/s/ Donald S. Owens
/s/ Michael J. Kelly