# STATE OF MICHIGAN

# COURT OF APPEALS

In re IRWIN, Minors.

UNPUBLISHED
September 13, 2016

No. 330811
Kalamazoo Circuit Court
Family Division
LC No. 2012-000113-NA

Before: MURRAY, P.J., and HOEKSTRA and BECKERING, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her three minor children under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (c)(*i*), (g), and (j). Because the trial court did not clearly err by terminating respondent's parental rights, we affirm.

This case began in March of 2012, when the Department of Health and Human Services (DHHS) filed a petition alleging abuse and neglect relating to respondent's oldest child CBI, who is currently nine years old. In June of 2012, CBI was removed from respondent's care. During the next 3-1/2 years, respondent received numerous services from the DHHS aimed at reunification, including parenting classes, psychological counseling, domestic violence groups, and a parenting coach. At times respondent appeared to cooperate with and benefit from these services. Indeed, after respondent gave birth to twins in January of 2014, the twins were released to her care and, for a brief period of time beginning in April of 2014, respondent had CBI and the twins in her home. However, all three children were removed from respondent in July of 2014 because respondent showed a marked relapse in concerning behavior and she refused to continue further participation in services. At that time, CBI was placed with his grandparents and the twins were placed in foster care. Respondent's parenting time was suspended in March of 2015. Ultimately, the trial court terminated respondent's parental rights in December of 2015. Respondent now appeals as of right.

On appeal, respondent argues that the trial court erred in finding that the statutory grounds for termination were proved by clear and convincing evidence. Respondent does not address the trial court's statutory grounds for termination with any specificity, but generally argues that respondent has made progress, including recent progress with regulating her medications and attending counseling, and that she should be allowed more time to improve, particularly in regard to the twins. In connection with this argument, respondent also challenges the trial court's decision to allow suspension of her parenting time in March of 2015.

-1-

To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). We review for clear error a trial court's finding whether a statutory ground for termination has been proved by clear and convincing evidence. *Id.* "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

In this case, the trial court terminated respondent's parental rights under several statutory grounds, including MCL 712A.19b(3)(g) and (j), which state:

> The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> ***
>
> (g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> ***
>
> (j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Relevant to these subsections, respondent suffers from mental health issues, including bipolar disorder, and her mental and emotional instability have contributed to her failure to provide proper care for her children. Given the severity of her mental health issues and her failure to consistently benefit from services provided over 3-1/2 years, there is also no reasonable expectation that she will be able to provide proper care and custody within a reasonable time. Indeed, respondent lacks suitable housing for the children and, by her own admission, will need another full year before she can provide care. This same evidence also demonstrates a reasonable likelihood that the children would be at risk of harm if returned to respondent's care.

In particular, during this case, the most notable recurring barrier to reunification has been respondent's mental and emotional instability, including her bipolar diagnosis. Respondent has been given numerous services to address her mental health concerns, but she has had mixed success with medication and she has failed to consistently follow through with counseling. Despite some progress early in the case, in 2014 respondent stopped complying with services. She also began to engage in disruptive and assaultive behavior, sometimes in front of the twins, which culminated with her assaulting the children's guardian ad litem at the June 26, 2014 hearing. Based on respondent's conduct, the minor children were removed from respondent's home. Later that summer, respondent assaulted CBI's father with her car. After her arrest for that assault, respondent was incarcerated until February or March 2015. Aside from this

assaultive conduct, respondent has also had various outbursts and confrontations with individuals involved with providing services to respondent.

At the time of the termination hearing, respondent was in jail in relation to an uttering and publishing conviction. Respondent estimated that she would probably be in jail for another several months, and she believed that it would take a year before she would be able to provide for the minor children. Respondent did not have adequate housing for the minor children. Respondent's only potential housing was a trailer, which did not have running water, a refrigerator, indoor plumbing, or a working furnace. Additionally, although respondent had recently been taking Latuda and attending therapy before she was arrested in October 2015, Dr. Randall Haugen testified that respondent, given her mental illness, was likely to have periods of regression and significant problems, even with effective treatment. This was consistent with evidence that respondent showed progress early in the case but soon regressed to disruptive and aggressive behavior. When Haugen evaluated respondent in April 2015, he did not believe that respondent was capable of parenting a child over a long period of time given her instability and the severity of her mental health issues. He explained that generally individuals with the severity of respondent's mental health issues are unable to raise children unless they are part of a household where others are doing much of the caretaking and supervision. Haugen believed that the minor children would be in danger if they were placed in respondent's home. Further, the evidence showed that the children had in fact reacted negatively to their most recent visit with respondent. Also, Dr. James Henry testified that CBI was a "very traumatized" child, whose number one need was a safe and secure environment. He was going to "demand intensity" by a caregiver to help him with his behavior and relationships. Henry believed that a return to respondent's home would be devastating to CBI's long-term development.

Under these circumstances, we are not left with a definite and firm conviction that the trial court made a mistake in finding that there was clear and convincing evidence that respondent failed to provide proper care and custody for the minor children and there was no reasonable expectation that respondent would be able to provide proper care and custody within a reasonable time considering the children's ages, MCL 712A.19b(3)(g), or that, based on respondent's conduct or capacity, there is a reasonable likelihood that the minor children will be harmed if returned to respondent's home, MCL 712A.19b(3)(j).[1]

In contesting the termination of her parental rights, respondent also claims that the trial court erred when it suspended her parenting time in March 2015. Questions regarding the amount of parenting time, if any, and conditions of parenting time following adjudication and before the filing of a petition to terminate parental rights are left to the sound discretion of the trial court and are to be decided in the best interests of the child. *In re Laster*, 303 Mich App

---

[1] The trial court also terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (c)(*i*). However, because only one ground for termination is required, we need not address the additional grounds for termination identified by the trial court. *In re Powers Minors*, 244 Mich App 111, 119; 624 NW2d 472 (2000).

485, 490; 845 NW2d 540 (2013). No finding of harm to the child is required before suspending parenting time. *Id.*

In this case, the trial court did not abuse its discretion by allowing the DHHS to suspend respondent's parenting time. At the March 12, 2015 hearing, the caseworker testified that respondent had one parenting time visit since her release from jail in February or March 2015. According to CBI's therapist, the child's grandparents reported that CBI had had trouble sleeping for a few nights before the visit and that he had started to wet his bed after the visit, which he had not done in the two months before the visit. The therapist believed that the bedwetting was related to anxiety. The therapist also testified that CBI had started to make disclosures, including that respondent had massaged herself with a dildo in front of him. Additionally, there was evidence that, after the visit, the twins had a rough night. They screamed if their foster parents left them, and one twin had to be rocked to sleep, something she had not required in months. The twins remained clingy the following day. Based on the reactions of the minor children following the parenting time visit and the disclosures of inappropriate sexual conduct, the trial court did not abuse its discretion in determining that the best interests of the minor children was to give petitioner discretion to suspend respondent's parenting time. *Id.* Thus, this discretionary suspension of respondent's parenting time did not render the trial court's termination decision clearly erroneous.

Finally, respondent argues that the trial court erred in finding that termination of her parental rights was in the best interests of the minor children. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights . . . ." MCL 712A.19b(5). We review for clear error a trial court's decision regarding the child's best interests. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015). The trial court must determine the child's best interests by a preponderance of the evidence. *In re Moss,* 301 Mich App at 90. "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (citation and quotation marks omitted). Other relevant factors may include the risk of harm in returning a child to the parent's care, *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011), as well as "the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption," *In re White*, 303 Mich App at 714.

In this case, CBI has been out of respondent's home since June 2012 with the exception of approximately three months in the spring of 2014. Since June 2014, CBI had been living with his grandparents. CBI was bonded with them, and he felt safe and secure living there. The grandparents were willing to adopt him. The twins have been out of respondent's home since June 2014. They were bonded with their foster family, a potential adoptive family. The children had not seen respondent since the summer of 2014, with the exception of one parenting time visit in March 2015, and their negative reaction to the visit caused respondent's parenting time to be suspended. Under these circumstances, along with the testimony of Haugen and Henry regarding respondent's inability to parent and the possibility of harm to the minor children if

returned to respondent's home, the trial court did not clearly err in finding that termination of respondent's parental rights was in the best interests of the minor children.

Affirmed.

/s/ Christopher M. Murray
/s/ Joel P. Hoekstra
/s/ Jane M. Beckering