# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* HERBER, Minors.

UNPUBLISHED
July 19, 2018

Nos. 341334; 341362
St. Clair Circuit Court
Family Division
LC No. 15-000280-NA

Before: CAMERON, P.J., and JANSEN and O'CONNELL, JJ.

PER CURIAM.

In Docket No. 341334, respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor children, RMH and CAH, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (parent unable to provide proper care or custody), and (j) (reasonable likelihood child will be harmed if returned). We affirm.

In Docket No. 341362, respondent-father also appeals as of right the trial court's order terminating his parental rights to the minor children, RMH and CAH, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (parent unable to provide proper care or custody), and (j) (reasonable likelihood child will be harmed if returned). We affirm.

## I. RELEVANT FACTS

Respondents' minor children were removed from their home in 2015, when RMH was not yet two years old and CAH was a newborn. The minor children were removed due to respondents' failure to supervise the children. Additionally, RMH had several developmental delays and an attachment disorder that made her prone to approach strangers without inhibition. Respondents struggled with mental health and poor hygiene, and they relied on the mother of respondent-father for housing.

After the minor children were removed, respondents found full-time employment and established their own home. While in foster care, RMH received speech, occupational, and physical therapy to address her developmental delays. Sadly, in 2016, CAH was diagnosed with liver cancer and eventually received a liver transplant. As a result, CAH became a medically fragile child who required a high level of care, including a sanitary living environment because he was immunosuppressed from post-transplant medications. He was fed through a tube, and required a regimen of medications.

-1-

During this time, respondents received individual therapy, parenting classes, in-home parenting support during parenting time with RMH, and services with Families Together Building Solutions (FTBS). However, respondents were unable to provide consistent care for RMH during their parenting time. Respondents had difficulty getting RMH to eat, and sometimes failed to provide food for her entirely. The service providers offered suggestions, which respondents sometimes followed successfully, but respondents failed to consistently maintain progress without being prompted. Respondents never learned to feed CAH and administer his medications. Although the service providers helped respondents establish cleaning schedules to keep the home sanitary for CAH, respondents did not consistently comply with the schedules. Respondents also had difficulty maintaining their own personal hygiene in accordance with CAH's needs. Respondents frequently argued with each other over which of them should attend to the children's needs.

Following a termination hearing, the trial court found that clear and convincing evidence supported terminating respondents' parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). Further, the trial court found that petitioner had established by a preponderance of the evidence that termination was in the best interests of the minor children. Accordingly, the trial court terminated respondents' parental rights to the minor children, and these appeals followed.

## II. DOCKET NO. 341334

In Docket No. 341334, respondent-mother argues that the trial court erred by finding that clear and convincing evidence supported statutory grounds for termination of her parental rights. Respondent-mother further argues that it was not in the best interest of the minor children to terminate her parental rights. We disagree.

## A. STATUTORY GROUNDS

We first address respondent-mother's argument that clear and convincing evidence did not support termination of her parental rights under MCL 712A.19(b)(3)(c)(*i*), (g), or (j).

"We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). A finding of fact is clearly erroneous if, after giving special regard to the trial court's unique and special opportunity to observe the witnesses, MCR 2.613(C), we are left with a definite and firm conviction that a mistake has been made. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013).

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). Here, the trial court found that clear and convincing evidence supported termination of respondent-mother's parental rights pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that lead to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood the child will be harmed if returned to the parent). Respondent-mother contests all three grounds on appeal, and each is addressed in turn.

-2-

MCL 712A.19b(3)(c)(*i*) provides that the trial court may terminate a respondent's parental rights if it finds, by clear and convincing evidence, the following:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence finds . . .

> (*i*) The conditions that lead to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

This statutory ground exists when the conditions that brought the children into foster care continue to exist despite "time to make changes and the opportunity to take advantage of a variety of services." *In re Powers*, 244 Mich App 111, 119; 624 NW2d 472 (2000).

The minor children were removed from respondent-mother's care due to her demonstrated poor parenting skills. Respondent-mother failed to supervise RMH, who was an active, impulsive toddler. She unreasonably slept in too late to establish routines for RMH, and also failed to maintain adequate hygiene for herself and RMH. Respondent-mother was dependent on respondent-father's mother for housing, although her home was cluttered and dirty. Respondents made some progress with the Families First service, by learning to follow a routine for RMH's care, but Families First recommended further in-home services. Removal of RMH and CAH was recommended after RMH got out of the house through a window and climbed onto the roof.

After the minor children were removed, respondent-mother did find independent housing with respondent-father, as well as full-time employment. However, respondent-mother argues that her progress was disrupted by CAH's medical crisis. Four service providers testified that respondent-mother failed to make consistent progress and required repeated reminders to manage the children's needs. Without those reminders, respondent-mother was unable to keep the home maintained sanitary as required by CAH's medical needs, or to assist RMH with eating or controlling her outbursts. Respondent-mother downplays RMH's eating problems, but petitioner presented evidence that respondents sometimes failed to provide RMH with any snack or meal during parenting time. Respondent-mother emphasizes that RMH was not malnourished, but this was because she was regularly fed in her foster home.

Likewise, respondent-mother was unprepared for CAH's arrival home. Respondent-mother never learned to manage CAH's feedings through a feeding tube, never learned to administer CAH's medications, and never even opened the feeding tube practice equipment they received. Respondent-mother asserts that her psychiatric medication was only briefly interrupted for the purpose of making herself available as an organ donor. However, CAH's transplant surgery was in September 2016. Respondent-mother went without a medication review from April 2016 to January 2017. Based on the foregoing, we conclude that clear and convincing evidence supported termination of respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*).

In finding that termination was appropriate under MCL 712A.19b(3)(c)(*i*), this Court need not address the trial court's conclusions regarding termination under MCL 712A.19b(3)(g) or (j). *In re Trejo*, 462 Mich at 360. Regardless, we conclude that the trial court did not clearly err in finding termination of respondent-mother's parental rights was appropriate on these grounds. MCL 712A.19b(3)(g) provides that a trial court may terminate a respondent's parental rights if the court finds, by clear and convincing evidence, that "[t]he parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." This Court has held that "[a] parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014).

As discussed in relation to termination of respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*), respondent-mother failed to benefit from her treatment plan. That is evidence enough that she would not be able to provide proper care and custody for RMH and CAH. *White*, 303 Mich App at 710. Specifically, respondent-mother never learned to meet CAH's level of needs. She never learned to administer his medication or feed him. Respondent-mother missed opportunities for medical training. She did not use the practice feeding equipment given to her. When she had the opportunity to stay with CAH in the hospital for three days, she stayed outside the hospital and arrived too late and left too early to receive medication training. Respondent-mother also could not maintain personal cleanliness or home cleanliness in accordance with CAH's need for a sanitary environment. Additionally, respondent-mother struggled to parent RMH: respondent-mother was unable to handle RMH's behavioral issues, had difficulty providing and getting RMH to eat nutritious meals, and failed to appreciate that RMH had developmental delays that required therapy. Further, respondent-mother and respondent-father had difficulty interacting with each other with respect to caring for the minor children. Accordingly, it cannot be said that the trial court clearly erred by finding that petitioner had presented clear and convincing evidence to support the termination of respondent's parental rights pursuant to MCL 712A.19b(3)(g).

Finally, MCL 712A.19b(3)(j) provides that the court may terminate a respondent's parental rights if the court finds, by clear and convincing evidence, that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." A parent's failure to comply with his or her treatment plan is evidence that a child may be harmed if returned to the parent's home. *White*, 303 Mich App at 710-711.

Again, we conclude that clear and convincing evidence supported termination of respondent-mother's parental rights under MCL 712A.19b(3)(j). Both children have critical special needs that would be neglected in respondent-mother's care. RMH's emotional and developmental needs, and her need for supervision to counter her impulsive tendencies would likely not be met in respondent-mother's home. RMH's progress in therapy would stall without parents who were attentive to the therapists' recommendations. CAH would be endangered if he resided in an unclean home, with caregivers unable to provide his medication and nutrition. The evidence clearly showed that respondent-mother was unprepared to provide the advanced level of care he requires. Accordingly, the trial court did not clearly err in finding that the evidence also supported termination of respondents' parental rights under MCL 712A.19b(3)(j).

-4-

We note that respondent-mother argues that petitioner did not address her ability to address CAH's medical needs until the February 2017 permanency planning hearing, leaving her only three months to learn to care for CAH in order to prevent termination of her parental rights. She argues that petitioner's abrupt imposition of this requirement constitutes a failure to make reasonable efforts toward reunification. Petitioner is obligated "to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85-86; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). Whether petitioner made reasonable efforts to reunify the family before seeking termination is a question of fact, which we review for clear error. See *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). Failure to make reasonable efforts toward reunification may prevent petitioner from establishing statutory grounds for termination. *In re Newman*, 189 Mich App 61, 65-68; 472 NW2d 38 (1991). However, "[w]hile the [petitioner] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

We reject respondent-mother's contention that petitioner did not address CAH's medical needs before February 2017, leaving her with only three months to learn how to care for him. CAH had transplant surgery in September 2016. Respondent-mother knew or should have known that CAH would require special care post-transplant. At the permanency planning hearing on December 5, 2016, the trial court and the parties discussed both respondent-mother's and respondent-father's need for training regarding CAH's care before they could progress to unsupervised visitation. CAH's needs were not a new issue that unexpectedly arose at the February 21, 2017 permanency planning hearing. Furthermore, respondent-mother did not make reasonable efforts to learn about CAH's care. Instead of staying with CAH in the hospital in March 2017, she and respondent-father only made day visits, arriving after morning medications and leaving before evening medications. Respondent-mother did not attempt to practice feeding procedures with the equipment she was given. Under these circumstances, respondent-mother cannot reasonably assert that she would have learned to care for CAH if petitioner offered further services and allowed her additional time.

## B. BEST INTERESTS

Respondent-mother challenges the trial court's best interests determination. We find no error.

Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). In considering whether termination of parental rights is in a child's best interests, a court may consider a variety of factors. *White,* 303 Mich App at 713-714. These factors include the existence of a bond between the child and the parent, the parent's ability to parent the child, the child's need for permanency and stability, the advantages of a foster home over the parent's home, the parent's compliance with his or her service plan, the parent's visitation history with the child, the child's well-being, and the possibility of adoption. *Id.*

Petitioner presented ample evidence that respondent-mother failed to prepare herself to provide ongoing care for either child. She required repeated reminders in order to manage

visitation with RMH, and to maintain basic cleanliness. Respondent-mother argued with respondent-father about RMH's care, instead of following a consistent routine. RMH made significant progress in speech therapy after her visitation with respondents ceased. After waiting two years for respondents to rehabilitate themselves, RMH should not be required to wait longer for permanency.

Similarly, respondent-mother's inability to manage basic household and childcare tasks would severely jeopardize CAH. Given his young age at the time of removal, CAH never formed a bond with either respondent, so termination would not disrupt his life. Considering CAH's medically fragile condition and his need for vigilant care, which respondent-mother was unprepared to provide, the trial court did not clearly err in finding that termination of respondent-mother's parental rights was also in his best interests.

### III. DOCKET NO. 341362

In Docket No. 341362, respondent-father also challenges termination of his parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). Although each argument is addressed in turn, we cannot conclude any to be meritorious.

### A. STATUTORY GROUNDS

First, respondent-father challenges termination of his parental rights under MCL 712A.19b(3)(c)(*i*). However, much of the evidence supporting respondent-mother's termination under this section applies to respondent-father as well. Respondent-father failed to maintain personal cleanliness. He failed to consistently provide acceptable care for the children without repeated reminders. He failed to help maintain the house at an appropriate level for CAH. He failed to comply with his psychiatric medications. Although respondent-father found full-time employment, he did not resolve the mental health problems and disorganization that led to the children's placement in foster care. Therefore, termination of his parental rights was appropriate under § 19b(3)(c)(*i*).

In finding that termination was appropriate under MCL 712A.19b(3)(c)(*i*), this Court need not address the trial court's conclusions regarding termination under MCL 712A.19b(3)(g) or (j). *Trejo*, 462 Mich at 360. Regardless, we conclude that the trial court did not clearly err in finding termination of respondent-father's parental rights was appropriate on these grounds. With respect to termination under MCL 712A.19b(3)(g), respondent-father argues that he was able to provide proper care for RMH. He states that his problems with maintaining an orderly parenting time session occurred because RMH perceived respondents as playmates. He states that these problems would have been resolved if RMH was returned to their care. Petitioner's evidence established, however, that respondents distracted RMH during her therapy sessions and failed to work with her on her speech therapy homework. In the home, respondents argued about who would prepare the meal or take RMH to the bathroom. Respondent-father had to be reminded of strategies for getting RMH to sit at the table and focus on eating instead of playing. Respondent-father tried one time to prepare a meal that respondent-mother could serve to RMH when she returned home from work, but never tried again. Respondent-father portrays RMH as a child with no unusual care needs, but this portrayal fails to recognize her developmental delays, her emotional extremes, and her attraction to strangers. Respondent-father emphasizes that a

family friend highly rated his parenting abilities, but the service providers and his own mother testified that he still was not prepared to care for RMH. Regarding CAH, respondent-father did not make progress toward learning to manage his care. Respondent-father states that any parent would have had difficulty learning to care for this medically fragile child, but respondent-father's lack of effort was unacceptable. Respondent-father failed not only to acquire medical training, but also to maintain an adequate level of cleanliness.

With respect to termination under MCL 712A.19b(3)(j), we reiterate that both minor children have critical special needs that would be neglected in respondent-father's care. RMH's emotional and developmental needs, and her need for supervision to counter her impulsive tendencies, would likely not be met in respondent-father's home. RMH's progress in therapy would stall without parents who were attentive to the therapists' recommendations. CAH would be endangered if he resided in an unclean home, with caregivers unable to provide his medication and nutrition. The evidence clearly showed that respondents were unprepared to provide the advanced level of care he requires. Accordingly, the trial court did not clearly err in finding that the evidence also supported termination of respondents' parental rights under MCL 712A.19b(3)(j).

## B. BEST INTERESTS

Respondent-father also argues that termination of his parental rights was not in the best interests of the minor children. We disagree.

Respondent-father made inconsistent progress at best with regard to RMH's care. Although respondent-father emphasizes that RMH's best interests should be considered separately from CAH's because her needs are less demanding, RMH has special needs that respondent-father was not able to meet. Respondent-father could not remain attentive at her therapy sessions. He did not work with her on her speech therapy. He argued with respondent-mother about her care, instead of following a consistent routine. RMH made significant progress in speech therapy after her visitation with respondents ceased. After waiting two years for respondents to rehabilitate themselves, RMH should not be required to wait longer for permanency.

Further, respondent-father essentially concedes that he failed to learn to care for CAH. Considering CAH's medically fragile condition and his need for vigilant care, which neither respondent was prepared to provide, the trial court did not clearly err in finding that termination of respondent-father's parental rights was also in his best interests.

Affirmed.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Peter D. O'Connell