*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re RANKIN/NYBERG/VALENZUELA, Minors.

UNPUBLISHED
May 12, 2022

No. 358240
Kalamazoo Circuit Court
Family Division
LC No. F2019-0189-NA

Before: GLEICHER, C.J., and RONAYNE KRAUSE and BOONSTRA, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to her three minor children, MR, KN, and HV. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Respondent is the mother of MR, KN, and HV.[1] In May 2019, petitioner, the Michigan Department of Health and Human Services, filed a petition alleging, with respect to respondent, that in February 2019 she had physically assaulted MR in an altercation that had also resulted in an injury to HV. The petition also alleged that respondent had "substance abuse issues with methamphetamine that impact her ability to provide a safe and stable home environment," noting that respondent had tested positive for amphetamines and methamphetamine on February 25, 2019, had refused several drug screens requested by Children's Protective Services (CPS) in April and May 2019, had been referred to substance abuse counseling but had only completed two sessions before discontinuing, and had "declined a referral to the Women's Specialty Program." The petition alleged that respondent and her children lived with respondent's mother, that respondent's methamphetamine use had caused "substantial dysfunction within the home, including frequent and intense verbal and physical altercations with her mother" in the presence of the children, and

---

[1] MR's and KN's father was a respondent in the proceedings below, and his parental rights were also terminated by the trial court's order. HV's father was a respondent in the proceedings below, but his parental rights were not terminated. Neither father is a party to this appeal, and this opinion's use of "respondent" refers to the minor children's mother.

that respondent was unable to maintain steady employment and relied on her mother to provide care for her children.

The initial petition requested that the trial court take jurisdiction over the children but did not seek their removal from their residence. However, DHHS filed an amended petition five days later on June 4, 2019, adding allegations that MR had been sexually assaulted by an individual that respondent had allowed into her home, and that respondent had tested positive for methamphetamine on May 31, 2019.[2] That same day, at a preliminary hearing, respondent admitted to the allegation that she had tested positive for methamphetamine on May 31 while the children were in her care and custody. The referee authorized the amended petition and ordered that the children be placed with their maternal grandmother, who had temporarily moved out of the home she shared with respondent; respondent was then still living in the home.

Respondent subsequently entered a plea of admission to the allegations in the amended petition that she had a substance abuse problem and that her use of methamphetamine had impacted her ability to care for her children. Respondent had moved in with a friend and the children remained with their maternal grandmother. Respondent was given a case services plan that required her to participate in substance abuse evaluation and counseling, random drug screening, and individual therapy, as well as requiring her to obtain and maintain employment and appropriate housing.

From August 2019 until June 30, 2021, respondent consistently participated in supervised parenting time visits; however, the caseworkers observing these visits reported numerous issues of respondent being distracted, inattentive, easily frustrated, and often angry with the children, requiring intervention. Respondent completed a psychological evaluation in October 2019.[3] Her evaluator recommended that she continue substance abuse treatment and random drug and alcohol screens, noting that it was "critical [that respondent] establish a healthy external support network" and that respondent should be encouraged to attend Narcotics Anonymous (NA) and obtain a sponsor. The evaluator also recommended individual therapy and parenting classes.

Respondent participated in individual counseling from mid-September to November 27, 2019, but stopped attending. She engaged with counseling again in January through April 2020, but again stopped attending sessions. Respondent repeatedly missed drug screens or tested positive for methamphetamine in June through September 2020.

Respondent was convicted of uttering and publishing in fall of 2019, and was placed in the Kalamazoo Probation Enhancement Program (KPEP), a residential jail diversion program, in late

---

[2] The amended petition also added allegations regarding the children's fathers.

[3] It does not appear from the record that respondent received a separate substance abuse evaluation; she testified at the termination hearing that her psychological evaluation in part involved substance abuse concerns.

2020.[4] Respondent completed the program and was discharged in January 2021. She began to miss drug screens shortly after her release from KPEP, as well as testing positive for methamphetamine and amphetamine. Respondent was ordered, in total, to submit to 101 random drug screens, but only submitted to 57; of those 57, only 9 were negative, with the remainder being positive for primarily methamphetamine and amphetamines.[5] Respondent was offered inpatient substance abuse treatment several times; in May of 2021, DHHS offered her additional assistance that would pay her rent while she was participating in an inpatient program. Respondent refused every offer of inpatient treatment. Respondent's caseworker testified at the termination hearing that respondent did not explain why she had refused, but that respondent had repeatedly stated her belief that her substance abuse was not an issue, comparing her methamphetamine use to the (presumably non-problematic) use of alcohol.

Respondent's caseworker testified that respondent had requested family counseling and had been informed that family counseling would not be offered while respondent was not engaged in her own individual counseling. As stated, respondent only sporadically attended individual counseling for roughly five or six months; further, respondent revoked her release of information with her therapist in April 2020, preventing DHHS from obtaining information about her treatment progress. In April 2021, respondent was enrolled in a program that provided both individual and family substance abuse counseling as well as parenting skills, but was a "chronic no show" and ultimately ceased participating in the program that same month, telling her caseworker that she did not believe she would benefit from the program. Respondent completed a one-year foster care supportive visitation program in July 2020, but was never evaluated as being able to have unsupervised visits.

A termination hearing was held on June 30, 2021. At the time of the termination hearing, HV lived with his father, who had received sole legal and physical custody in a separate custody proceeding; MR and KN continued to reside with their maternal grandmother. At the termination hearing, respondent testified that she was sleeping on the night that MR was sexually assaulted and was not aware of the incident at the time. Respondent testified that she had stable housing since February 2021 and was employed as server at a bar. Respondent testified that she completed several services while enrolled in KPEP. She also testified that she had "looked into" Alcoholics Anonymous (AA) and NA, and had attended some meetings, most recently in March 2021. Respondent testified that she had been participating in individual counseling with a new counselor since March 31, 2021; however, she claimed that the counselor told her that her supervisor "is against signing a release of information." Respondent testified that her relationship with her mother and "family turmoil" was a trigger for substance use, and stated that she and her mother had been working on their relationship. When asked if her mother had joined any of her therapy sessions, respondent stated: "My therapist doesn't – isn't—we're not ready for that yet." No independent corroboration of her participation was provided, nor did her counselor testify; respondent's counsel stated that he "did send out . . . a request . . . for her counselor to appear" but

---

[4] Respondent initially failed to appear for her KPEP start date in November 2019 and had a warrant issued for her arrest. She ultimately turned herself in and began the program in October 2020.

[5] The caseworker testified at the termination hearing that she thought "a couple have been THC," meaning the active ingredient in marijuana.

that the counselor's "company" is "pretty strict and was not abiding by any requests." Respondent testified that her counselor's "supervisor is requesting a subpoena" to testify in court or release her information.

Following the termination hearing, the trial court issued a written opinion and order finding that statutory grounds for termination of respondent's parental rights to the children under MCL 712A.19b3(c)(i), (g), and (j) had been proven by clear and convincing evidence. The court also found that termination was in each child's best interests, even considering MR and KN's placement with their maternal grandmother. This appeal followed.

## II. REASONABLE EFFORTS TOWARD REUNIFICATION

Respondent argues that the trial court erred by determining that DHHS made reasonable efforts toward reuniting her with her family, and therefore erred by determining that statutory grounds for termination of her parental rights had been established. We disagree.

We review for clear error a trial court's decision that a statutory ground for termination of parental rights has been established. *In re JK*, 468 Mich 202, 209; 661 NW2d 216 (2003). We also review for clear error a trial court's factual findings. See MCR 3.911(K); *In re Gonzales/Martinez*, 310 Mich App 426, 430; 871 NW2d 868 (2015). The trial court's decision "is clearly erroneous if, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re JK*, 468 Mich at 209-210. The petitioner must only establish one statutory ground for termination of a respondent's parental rights. See *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012). Therefore, so long as the trial court properly found at least one ground for termination, any error by the trial court in finding that another statutory ground also existed is harmless. *In re Powers Minors*, 244 Mich App 111, 118; 624 NW2d 472 (2000).

To preserve a challenge to the sufficiency of the services provided by DHHS, respondent must object or indicate that the services provided to them were inadequate. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). At the termination hearing, respondent's caseworker did testify that respondent had expressed her dissatisfaction with the services being offered to her, and had "previously stated" that she would like to have family counseling. It does not appear that the issue of family counseling was specifically raised with the trial court, nor was it made clear when respondent made these statements. Nonetheless, because respondent at least arguably raised this issue prior to the termination hearing, we will grant her the benefit of the doubt and treat this issue as preserved. We review for clear error the trial court's determination that petitioner made reasonable efforts to reunify the family. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989).

Respondent does not specifically challenge the trial court's finding of statutory grounds for termination, but argues that DHHS did not make reasonable efforts to reunify her with her family. Even if a statutory ground for termination of a respondent's parental rights exists, the trial court is not required to terminate parental rights if the petitioner has not made reasonable efforts to reunify the child with the parents. See *In re Rood*, 483 Mich 73, 105; 763 NW2d 587 (2009) (CORRIGAN, J.); MCL 712A.19a(6)(c).

-4-

Respondent argues that DHHS failed to offer her sufficient services regarding her need for a healthy support network, which was noted by her psychological evaluation. Her argument is contradicted by the record. Respondent cites the portion of her psychological evaluation recommending that she attend AA or NA and obtain a sponsor, but does not explain how DHHS failed to facilitate her doing this. In fact, at termination, respondent testified that she had attended some AA meetings, although no testimony was solicited concerning whether she had obtained a sponsor. Respondent has not demonstrated that the trial court should have found that DHHS failed to provide her with services regarding respondent's participation in AA or NA, programs which do not generally require a referral and which respondent herself admitted she had attended. *Miller*, 433 Mich at 337.

Respondent also argues that DHHS refused to provide family counseling despite respondent's request. Again, we disagree with this characterization of the record. The testimony of respondent's caseworker made it clear that respondent was informed that the prerequisite for family counseling was that respondent engage with and make progress in her individual therapy. Yet the record shows that respondent only sporadically attended her individual counseling sessions over the period of a few months in late 2019 and early 2020, before, according to respondent, beginning individual counseling with a new therapist in March 2021. As noted, respondent's recent participation in counseling could not be independently verified by either records or testimony, and in fact the trial court did not find this testimony credible. We generally defer to the trial court's assessment of the credibility of those who testify before it. See *In re Loyd*, 424 Mich 514, 535; 384 NW2d 9 (1986). Additionally, respondent was referred to a comprehensive program that included family counseling as a service provided, but quit the program after less than one month. And even if respondent's testimony regarding her counseling was credible, respondent herself testified that she and her therapist were "not ready" to have her mother join their therapy sessions. Respondent also added that, outside of a therapeutic setting, respondent and her mother had begun to repair their relationship.

Respondent does not explain how any additional services provided by DHHS would have made a difference in the outcome of this case. See *In re Fried*, 226 Mich App 535, 543; 702 NW2d 192 (2005). Even if DHHS had permitted family counseling, the record shows that respondent repeatedly failed to engage with or benefit from counseling services. DHHS's duty to provide services is matched by a respondent's corresponding duty to benefit from those services. See *Frey*, 297 Mich App at 248. Moreover, the record is devoid of evidence that the provision of family counseling would have forced respondent to acknowledge and address her drug problem when all other services provided had failed to do so. We find no clear error in the trial court's determination. *Miller*, 433 Mich at 337.

## III. FACTUAL FINDINGS

Respondent also argues that the trial court clearly erred by finding that respondent had abused methamphetamine during the night that she allowed a man into her home who subsequently sexually assaulted MR, and by finding that respondent had physically and emotionally abused her children on February 24, 2019. We disagree. We review a trial court's factual findings for clear error. *Gonzales/Martinez*, 310 Mich App at 430.

Regarding respondent's use of methamphetamine, the record shows that during a dispositional hearing in 2019, the trial court was provided with police reports of the incident in which MR was sexually assaulted. In one of those reports, the perpetrator of the sexual assault told police that he had been smoking marijuana and methamphetamine with respondent early that evening. Respondent also tested positive for methamphetamine three days later. Although respondent testified that she was merely asleep when the assault occurred and was not under the influence of controlled substances or alcohol, the record contains some evidence to support the trial court's finding and we are not firmly convinced that a mistake was made. *Gonzales/Martinez*, 310 Mich App at 430.

Regarding respondent's abuse of her children on February 24, 2019, a CPS worker testified that MR had reported that she was shoved into the stove and choked by her mother on the night in question. There was also evidence that an ashtray containing hot ash had been knocked over in the scuffle and injured HV. Again, although respondent denies that this abuse occurred, there was some evidence to support the finding and we are not firmly convinced that a mistake was made. *Gonzales/Martinez*, 310 Mich App at 430.

In any event, the incidents cited by respondent occurred at the beginning of these child protective proceedings. The trial court gave no indication that its findings about events that occurred in 2019 made termination in 2021 a *fait accompli*. In fact, the record shows that the trial court continually re-affirmed that reunification was the goal and encouraged respondent to make progress on her treatment plan in order to be reunited with her children. Respondent has not shown that, even if the trial court made erroneous factual findings, these errors infected its termination decision such that reversal was required. See MCR 2.613(A) and MCR 3.902(A); see also *In re TC*, 251 Mich App 368, 371; 650 NW2d 698 (2002).

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause
/s/ Mark T. Boonstra