*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. L. BYNUM, Minor.

UNPUBLISHED
May 12, 2022

No. 357884
Wayne Circuit Court
Family Division
LC No. 2018-001603-NA

Before: JANSEN, P.J., and CAVANAGH and RIORDAN, JJ.

PER CURIAM.

Respondent appeals as of right the trial court order terminating her parental rights to the minor child under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (c)(*ii*) (other conditions exist that have not been rectified), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if returned to parent).[1] On appeal, respondent argues that (1) petitioner, the Department of Health and Human Services, failed to make reasonable reunification efforts, (2) there was insufficient evidence to terminate her parental rights to the child because she was working toward compliance with her treatment plan, and (3) termination of her parental rights was not in the child's best interests. We affirm.

## I. BACKGROUND

The minor child and her two older siblings were removed from respondent's care in September 2018, because of respondent's substance abuse. The trial court exercised temporary jurisdiction after a bench trial and a treatment plan was adopted. The treatment plan required respondent to submit random drug screens, engage in family therapy and individual therapy, undergo a psychological examination, obtain suitable housing, obtain a legal source of income, visit the children, and maintain contact with the caseworker. Respondent was in compliance with her treatment plan early on, and voluntarily engaged in an inpatient substance abuse treatment

[1] The child's father was not identified and the trial court terminated the unknown father's parental rights to the child under MCL 712A.19b(3)(a)(*ii*) (desertion). Respondent's parental rights to two older children were not terminated because those children were placed in the custody of their father.

program. However, she relapsed and had several positive screens, and then stopped screening altogether. Although she completed another inpatient program, she did not benefit from it, and never completed substance abuse counseling. She never completed family therapy despite several referrals. While she completed a psychological examination and obtained employment, she never secured suitable housing, and her visits with the child were inconsistent. She claimed that she was seeing a new therapist, but the caseworker was never able to reach the therapist. Following a termination hearing in April 2021, the trial court terminated respondent's parental rights to the child because of her continued substance abuse, lack of housing, and failure to complete services.

## II. REUNIFICATION EFFORTS

Respondent first argues that petitioner failed to make reasonable reunification efforts. We disagree.

"In order to preserve the issue of whether reasonable efforts for reunification were made, a respondent must raise the issue at the time the services are offered." *In re Smith-Taylor*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 356585); slip op at 5. Respondent did not argue below that petitioner failed to make reasonable reunification efforts. Therefore, this issue is unpreserved. This Court reviews unpreserved issues for plain error affecting substantial rights. *In re Beers*, 325 Mich App 653, 677; 926 NW2d 832 (2018). "To avoid forfeiture under the plain-error rule, the proponent must establish that a clear or obvious error occurred and that the error affected substantial rights. An error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (quotation marks, citations, and brackets omitted).

"Under Michigan's Probate Code, the Department has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id*. at 85-86. Whether reasonable services were offered relates to the sufficiency of the evidence for termination of parental rights. *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005). "While the [Department] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). To prove a claim of lack of reasonable efforts, respondent must show that she would have fared better had petitioner offered other services. *In re Fried*, 266 Mich App at 543.

Although respondent argues that she was provided minimal assistance with housing, Dominique Dalton, the foster care specialist for the older two children, testified that respondent was provided numerous housing resources, including Section 8 information, Housing Commission information, and applications, but she never followed up with any of them. At the time of the termination hearing, respondent was living with a friend, had not allowed the home to be assessed, and had not requested any additional assistance. At one point, respondent said she was focusing on other services. The evidence established that petitioner made reasonable efforts to provide services to assist respondent in securing suitable housing, but respondent failed to participate in those services and essentially gave up on finding suitable housing. Respondent argues that Dalton never even asked to do a home assessment, but respondent informed the prior worker that the

house in which she was staying was not suitable. While Dalton did not provide any additional housing resources, the prior worker had given respondent numerous resources, respondent was not in consistent communication with Dalton, and respondent had not asked for more assistance. On appeal, respondent asserts that Dalton never assisted her with the applications, but Dalton asked respondent if she had completed them, and respondent never asked for assistance. Petitioner's efforts with regard to housing were reasonable.

Respondent next argues that petitioner failed to adequately address her substance abuse issue by providing referrals and specific assistance. Respondent was referred for substance abuse counseling at Assured Family Services, but she failed to complete it. Respondent also voluntarily entered and completed two inpatient programs during the case. However, she failed to benefit from those programs as shown by her continued positive tests and missed screens. After the COVID-19 shutdown, when testing resumed, respondent continued to miss screens, despite being informed that she needed to test and that missed screens would be considered positive results. Respondent never expressed concern with the location of the screening or transportation. Thus, respondent was provided with services to address her substance abuse issue, but she failed to either complete or benefit from those services. Further, while respondent argues that petitioner should have provided specialized substance abuse services, she fails to specifically identify what other services could have been offered to her or that they would have made a difference.

Respondent also argues that Dalton never helped her with her feelings of being overwhelmed. As respondent acknowledges, Dalton testified that she told respondent to focus on screening and her substance abuse issue, which were the priority. In addition, respondent had been referred to and was participating in individual therapy, but there was no evidence that she ever completed it. At the time of the termination hearing, respondent claimed to be seeing a new therapist who would address all of her issues, but Dalton was unable to reach the therapist. Respondent argues that Dalton never followed up with the therapist, but Dalton testified that she tried to reach the therapist for three months with no success. To the extent that family therapy could also have assisted respondent, she had to be referred four times, was early-terminated twice, and never completed the service. Again, respondent fails to argue what more petitioner could or should have done to address her feelings of being overwhelmed, or that she would have fared better had other services been offered.

Finally, respondent argues that she should have been given more flexible scheduling for visits and more bus tickets. However, during the period just before the termination hearing, respondent was given bus tickets and still did not attend visits. The child's foster care worker, Jalen Robinson, informed respondent's employer that she needed to take Thursdays off for visits, but respondent chose to work instead for the extra money. There is no evidence that more flexible scheduling or more bus tickets would have made a difference.

In sum, the reunification efforts made by petitioner were reasonable. Respondent was given a meaningful and adequate opportunity to participate in and benefit from services, but she failed to do so. Given her failure to fully take advantage of the services that were offered, respondent cannot show that she would have fared better had other services been provided. Respondent fails to establish plain error affecting her substantial rights.

### III. STATUTORY GROUNDS FOR TERMINATION

Next, respondent argues that there was insufficient evidence to support a statutory ground for termination of her parental rights to the child. We disagree.

"To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 635; 853 NW2d 459 (2014) (quotation marks and citation omitted). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination. The trial court's factual findings are clearly erroneous if the evidence supports them, but we are definitely and firmly convinced that it made a mistake." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014) (footnotes omitted). "A reviewing court must defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

The trial court found that termination of respondent's parental rights was proper under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j), which provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> (*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *
>
> (g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.
>
> * * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The trial court did not clearly err by finding that several statutory grounds for termination were established by clear and convincing evidence. Under MCL 712A.19b(3)(c)(*i*), the conditions that brought the child into care were respondent's substance abuse, lack of employment, and lack of housing. While respondent did obtain employment, she never secured stable housing or rectified her substance abuse problem, despite reasonable efforts by petitioner. Respondent continued to miss screens, never completed substance abuse counseling, and had stopped trying to find suitable housing. Given the length of time that the child had been in care and respondent's minimal progress, there was also no reasonable likelihood that the conditions would be rectified within a reasonable time considering the child's age.[2]

Under MCL 712A.19b(3)(g), respondent's failure to participate in and benefit from her treatment plan established that she could not provide proper care or custody for the child. See *In re White*, 303 Mich App at 710. Respondent did not consistently visit the child, did not have suitable housing, missed 93 out of 94 drug screens, did not benefit from her inpatient drug treatment programs, and did not complete family counseling. Respondent claims she was making great progress and getting close to compliance, but at the time of the termination hearing she had not been screening or visiting the child, and had stopped trying to find housing. She failed to even appear at the termination hearing. While the trial court did state that it was "possible" that respondent would get herself together and acknowledged that she had obtained employment, the court did not find that there was a *reasonable expectation* that she would do so within a reasonable time considering the child's age. Given the length of time the child had been in care and respondent's minimal progress on her treatment plan, there was no more than a mere possibility that respondent might provide proper care or custody within a reasonable time.

Finally, under MCL 712A.19b(3)(j), respondent's failure to comply with and benefit from her treatment plan was also evidence that the child would be harmed if returned to her care. See *In re White*, 303 Mich App at 711. Respondent claims "[t]his simply was not the situation in this case." However, she fails to explain why this principle should not apply. Although respondent claims that her marijuana use did not affect her ability to parent, her "drug of choice" was cocaine, and her 93 out of 94 missed screens were considered positive results. While there was no evidence that the child had ever been harmed in the past, respondent's failure to rectify her substance abuse

---

[2] We agree with the child's lawyer-guardian ad litem that MCL 712A.19b(3)(c)(*ii*) was not established. The trial court did not identify any other conditions that would cause the child to come within the court's jurisdiction. Nonetheless, any error in relying on this ground is harmless because only one statutory ground for termination must be established, and the trial court did not clearly err by finding that termination of respondent's parental rights was supported by other statutory grounds. *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011); *In re Powers*, 244 Mich App 111, 118; 624 NW2d 472 (2000).

issue, her lack of housing, and her overall failure to participate in and benefit from services showed a reasonable likelihood of harm in the future.

In sum, the trial court did not clearly err by finding that several statutory grounds for termination of respondent's parental rights to the child were established by clear and convincing evidence.

## IV. BEST INTERESTS

Lastly, respondent argues that termination of her parental rights was not in the child's best interests. We disagree.

"The trial court must order the parent's rights terminated if the Department has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *In re White*, 303 Mich App at 713, citing MCL 712A.19b(5). This Court reviews "for clear error the trial court's determination regarding the children's best interests." *In re White*, 303 Mich App at 713.

"The trial court should weigh all the evidence available to determine the children's best interests." *Id*. The trial court "should consider a wide variety of factors," including: "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality," "the advantages of a foster home over the parent's home[,]" "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 713-714 (quotation marks and citations omitted).

Respondent first argues that the trial court gave inadequate weight to the bond between her and the child. The trial court did not specifically address the bond between respondent and the child. Robinson opined that there was a bond between respondent and the child, but he could not say how strong it was.[3] The trial court had previously commented that the bond was as strong as it could be with three or four visits a month for an hour and a half. Even if the trial court did not give sufficient weight to the bond between respondent and the child, that one factor does not outweigh the other factors that supported termination, including the child's need for permanency, the foster parents' ability to provide permanency, respondent's lack of compliance with her service plan, respondent's inconsistent visitation, the fact that the child was comfortable and safe in her foster home, and the possibility for adoption. While the trial court did not explicitly address all of these factors, it properly focused on the child's need for permanency and the fact that respondent had not progressed beyond supervised visits.

---

[3] To the extent respondent argues that minimal evidence was presented regarding her bond with the child, we note that respondent's attorney did not call any witnesses at the termination hearing.

Respondent also argues that her visits with the child were appropriate and her marijuana use never affected her ability to parent. Again, however, respondent's cocaine use was a concern and her numerous missed screens were considered positive results.

Respondent also argues that termination of her parental rights was improper in light of the trial court's decision not to terminate her parental rights to the two older children. However, a trial court must consider the best interests of each child individually. *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012). The trial court properly considered the two older children separately because those children were not similarly situated with the child, given that they were able to be placed in the custody of their father, which weighed against termination. *Id*. at 43.

Respondent also argues that there was little evidence presented regarding the child's foster home. It is true that there was not a great amount of detail about the child's foster home, but there was evidence that the child was comfortable, she had a bond with the foster parents, and there was the potential for adoption, all of which weighed in favor of termination of respondent's parental rights.

Finally, respondent argues that the trial court erred because she would likely have come into compliance with her treatment plan within a reasonable time. For the reasons discussed earlier, this argument is without merit. Respondent made minimal progress on her treatment plan and had stopped participating in many aspects of her treatment plan at the time of the termination hearing, at which she failed to appear. In sum, the trial court did not clearly err by finding that a preponderance of the evidence showed that termination of respondent's parental rights was in the child's best interests.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael J. Riordan