*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* M. F. GRAF, Minor.

UNPUBLISHED
October 13, 2022

No. 360769
Eaton Circuit Court
Family Division
LC No. 14-018857-NA

Before:  K. F. KELLY, P.J., and BORRELLO and CAMERON, JJ.

PER CURIAM.

Respondent, the mother of the minor child, MG, appeals by right the trial court's order terminating her parental rights to MG.[1]  Because we conclude the trial court clearly erred when it determined that there were statutory grounds to terminate respondent's rights, we reverse and remand.

## I.  BASIC FACTS AND PROCEDURAL HISTORY

Respondent has a lengthy history with petitioner Department of Health and Human Services (the Department).  In 2016, respondent's rights to five of her children were terminated after the Department discovered that respondent and the children were living in unfit conditions. In addition, it was discovered that respondent failed to protect her children from physical abuse and neglected the children as well.

When respondent gave birth to MG, she failed to disclose her prior history to a Child Protective Services caseworker at the hospital.  An immediate investigation of respondent's living environment was conducted, and it was discovered that respondent was living in her mother's basement, which had no electricity, multiple garbage bags and clutter, and medicine bottles within reach of a child.  Thus, a day after MG's birth, the Department obtained an order to take MG into protective custody and began the process to terminate respondent's parental rights.

---

[1] The father of MG voluntarily terminated his rights to her and is not a party to this appeal.

As the case progressed, the Department changed its view and eventually recommended that MG be reunited with respondent. However, after it was learned by respondent's case worker, Molly Lautenslager, that respondent was not truthful about her employment status and that respondent had been in contact with MG's father despite the Department's concerns about him, it again recommended that respondent's rights to MG be terminated. Ultimately, the trial court agreed with the department, and terminated respondent's rights under MCL 712A.19b(3)(c)(*i*) (conditions which led to adjudication continue to exist and are unlikely to be rectified within reasonable time) and MCL 712A.19b(3)(i) (previous terminations of parental rights for serious and chronic neglect or physical or sexual abuse). This appeal followed.

## II. STANDARDS OF REVIEW

We review for clear error the trial court's decision that the Department established by clear and convincing evidence there was at least one statutory ground to terminate a respondent's parental rights. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). We also review for clear error the trial court's determination that termination of parental rights is in the best interest of a child for clear error. *Id.* at 713. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

## III. ANALYSIS

Respondent contends that she was making progress with respect to the barriers to reunification identified by the Department. She claims the trial court put too much emphasis on the fact that her rights to her other children were terminated and did not properly consider her progress and the fact that she was a fit parent for MG. The Department, however, argues that respondent was given a reasonable time to address her barriers but failed to do so. Because respondent would require 18 to 24 months of treatment to overcome her barriers, the Department urges the Court to affirm the trial court's order because such amount of time would not be reasonable under *In re Dahms*, 187 Mich App 644; 468 NW2d 315 (1991). We agree that the trial court clearly erred when it found by clear and convincing evidence that there was at least one statutory ground to terminate respondent's rights.

"As a constitutional matter, parental rights encompass parents' fundamental liberty interest in the care, custody, and control of their children." *In re Beck*, 488 Mich 6, 11; 793 NW2d 562 (2010) (quotation marks and citation omitted). The Department has the burden to show "by clear and convincing evidence at least one statutory ground for termination of parental rights." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). Only one statutory ground for termination need be established. *In re Olive/Metts Minors*, 297 Mich App 35, 41; 823 NW2d 144 (2012). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

Under MCL 712A.19b(3)(c)(i), the trial court may find a statutory basis to terminate a respondent's parental rights if at least 182 days have passed since the initial dispositional order

and "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." This statutory ground is satisfied if despite "time to make changes and the opportunity to take advantage of a variety of services, the conditions that originally brought the children into the foster care system still exist[]." *In re Powers Minors*, 244 Mich App 111, 119; 624 NW2d 472 (2000).

In our view, the fundamental issue with the trial court's decision that respondent would be unable to rectify the conditions that led to adjudication was the court's reliance on Dr. Andrew Barclay's testimony. According to the trial court, Dr. Barclay testified that from the date of the termination hearing, respondent would require an additional 18 to 24 months of treatment to resolve the issues preventing reunification. Citing Dr. Barclay's testimony, the trial court stated:

> [W]e have, at least, another 18 to 24 months before we can get to a point that we can . . . even think about getting rid of the jurisdiction of this case, and the child does, in fact, need that addressed because the child's age is so young that we need to have a quicker resolution than 18 to 24 months.

This finding was clearly erroneous. Dr. Barclay met with and assessed respondent on July 8, 2020 and July 13, 2020, at which time he stated that he would expect respondent "to become more functional in 12-18 months depending on her level of cooperation and identification with the therapist and her continuing involvement with her family and decreasing anger and resentment." When Dr. Barclay testified at the termination hearing on March 1, 2022, approximately 20 months after he met with respondent and wrote his report, he stated that he had not seen respondent since his evaluation in July 2020 and admitted that he was "not involved in any counseling or therapy" with respondent. It is clear, therefore, that when Dr. Barclay testified at the termination hearing, he was not stating that respondent would require *an additional* 18 to 24 months of treatment. Instead, his opinion as to respondent's need for counseling and therapy was made on the basis of his interview with her 20 months before.

During those 20 months, respondent did, indeed, receive counseling and therapy on a regular basis. Respondent regularly attended counseling with Steven Edwards at Cherry Health. Indeed, by December 2020, it was the Department's view that respondent made significant progress with Edwards. Lautenslager testified at that time that

> [respondent] continues in counseling with Steven Edwards through Cherry Health; she has attended all of her sessions. Mr. Edwards has indicated that she is engaged in those sessions and has been open to discussing the concerns that have been outlined both in the psychological evaluation as well as the Parent Agency Treatment Plan.

Because of this progress, by March 2021, the Department no longer viewed respondent's emotional stability as a barrier to reunification.

The Department would, of course, backtrack on this determination when it learned that respondent failed to disclose her employment status and when it learned that respondent had visited with Graf (MG's father) and was receiving financial assistance from him. But there was no

-3-

evidence presented to the trial court that this setback reset the "clock" on respondent's progress. Indeed, by May 2021, respondent was again engaged in counseling with Kim Christensen, a counselor with whom she treated in her prior termination case, to address respondent's issues with communication with the Department. Respondent continued counseling with Christensen through the date of the termination hearing 10 months later.

Respondent's reliance on *In re Dahms* is, in our view, misplaced. In that case, this Court affirmed the trial court's determination that termination was proper under MCL 712A.19b(3)(c)(*i*) because the court found, on the basis of expert testimony, that the respondent would require two to three years of counseling to address her issues. *In re Dahms*, 187 Mich App at 647. In this Court's view, such an amount of time would not be reasonable under the statute, given the children's "pervasive behavior disorders that require extensive attention." *Id*.

Unlike *In re Dahms*, however, respondent demonstrated that she was capable of overcoming her mental health and emotional stability issues, but for a setback she suffered in April 2021. Moreover, there is no evidence in this case that MG had any "pervasive behavior disorders" that would present significant challenges for respondent should reunification occur. The thrust of the Department's concern with respondent centered on respondent's ability to effectively communicate with the Department. Respondent demonstrated she had acceptable housing and income to support MG. And despite the Department's supposition and belief, Lautenslager admitted she had no evidence that respondent ever communicated with, much less had a relationship with, Graf after the two visited with each other in April 2021.

To be clear, respondent was not able to overcome all of the conditions that led to adjudication by the time the trial court held the termination hearing. But the core of the trial court's finding—that respondent would require an additional 18 to 24 months of intensive counseling to overcome those barriers—was without support in the record. Dr. Barclay's testimony was made on the basis of his examination of respondent 20 months before the termination hearing. Over those 20 months, respondent made significant progress, so much so that the Department was prepared to reunify MG with her. Accordingly, we conclude the trial court clearly erred when it concluded that the conditions that led to adjudication could not be rectified within a reasonable amount of time given MG's age.

The trial court also found that clear and convincing evidence supported termination under MCL 712A.19b(3)(i). Under that subsection, termination is proper when "[p]arental rights to 1 or more siblings of the child have been terminated due to serious and chronic neglect or physical or sexual abuse, and prior attempts to rehabilitate the parents have been unsuccessful."

To begin, the record provided to the Court with respect to this case is scant as it relates to respondent's prior terminations. In the Department's petition, the Department claimed that respondent's rights to her other children were terminated because respondent "failed to protect the children from their father's physical abuse, and also physically neglected the children which led

-4-

to their removal." These children were not fathered by Graf.[2] In addition, on the basis of testimony from Lautenslager, it appears that respondent's rights to the other children were also terminated because of respondent's deplorable housing environment.

Whatever barriers that respondent continues to face with respect to MG, they do not appear to be the same barriers that led to termination in the prior case. There is no dispute that respondent effectively rectified the conditions of her living environment. And while the Department had concerns regarding Graf, there was no evidence that he was physically abusive toward MG or respondent. And perhaps more importantly, there was no evidence that respondent continued to communicate with Graf after the Department made it clear that such a relationship would be a barrier to reunification. In other words, whatever rehabilitation respondent needed to overcome the issues with her prior termination appear to have been rectified.

In sum, we conclude the trial court clearly erred when it found that one or more statutory grounds for termination had been demonstrated by clear and convincing evidence. Respondent made significant progress toward reunification with MG and clearly suffered a setback in early 2021. But the trial court's heavy emphasis on the fact that respondent would require an additional 18 to 24 months of treatment before reunification could be again considered leaves us with a definite and firm conviction that a mistake has been made.[3]

Reversed and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Thomas C. Cameron

---

[2] At one point during the termination proceedings, the trial court appeared to confuse Graf with respondent's former husband when it stated Graf was "extremely unhealthy [and] detrimental to the children."

[3] Because we conclude that the trial court clearly erred with respect to whether there were statutory grounds for termination, we need not address whether termination was in MG's best interest.